State v. Capps.

---

## THE STATE v. WILLIE CAPPS, Appellant.

Division Two, December 22, 1925.

1. **INSUFFICIENT EVIDENCE.** In this case, in which defendant is charged with having feloniously shot, from ambush in the woods, a neighbor, with intent to murder, as the neighbor and others in an automobile passed along a public road, it is *held* that the evidence produced is insufficient to support a verdict of guilty, being based on mere conjecture and suspicion, no witness having seen the defendant in the neighborhood, and there being no circumstance

from which beyond a reasonable doubt his guilt could be inferred; and therefore the judgment is reversed and the cause remanded.

2. **INSUFFICIENT EVIDENCE: Motive.** Motive is only a link in the chain of circumstances to be established by the evidence, and however clearly established, if uncorroborated by other facts and circumstances inconsistent with innocence, is not sufficient to authorize a submission of the question of defendant's guilt to the jury.

3. ————: **Inference upon Inference.** A verdict of guilty cannot be made to rest upon a conclusion which is reached by piling one inference upon another, from which it may be only conjectured that defendant might have committed the felony.

4. ————: **Presumption of Innocence: Substantial Evidence.** A verdict of guilty cannot stand where all the facts and circumstances shown by the evidence may be admitted to be true and yet defendant be innocent of the crime charged. To overcome the presumption of innocence with which the law clothes a defendant throughout the trial, his guilt must be shown by substantial testimony, and cannot be based upon mere conjecture or suspicion.

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Section 43, p. 79, n. 19; Section 1005, p. 534, n. 33; Section 1568, p. 764, n. 54; Section 1570, p. 766, n. 78. Homicide, 30 C. J., Section 562, p. 318, n. 82; p. 319, n. 97. Indictments and Informations, 31 C. J., Section 260, p. 708, n. 29.

Appeal from Dent Circuit Court.—*Hon. W. E. Barton,* Judge.

REVERSED AND REMANDED.

*Wm. P. Elmer* for appellant.

(1) The motion to suppress evidence should have been sustained. The gun was illegally obtained by the officers in violation of defendant's constitutional rights. They had no search warrant and no crime was committed in their presence and the arrest was not made in the home. It is a clear case of official oppression now so prevalent. Officers are substituting their power for the law of the land. Secs. 23 and 11, Art. 2, Constitution. (a) Besides there is no evidence of the slightest character that the gun taken from defendants was used to fire the shots at Cook and Rogers. 16 C. J. 618, Secs. 1222-1225. (b) Property possessing evidentiary value obtained by

government officials by means of an illegal search are not admissible in evidence against the person affected whose premises were searched.     United States v. Camorto, 278 Fed. 388; State v. Owen, 259 S. W. 105; State v. Lock, 259 S. W. 116; Weeks v. United States, 232 U. S. 383. (c) The home owner who yields peaceably to the officers' demands is as much under restraint as if he forcibly resists such official interference with his rights. State v. Owen, and State v. Lock, supra.     (d) The evidence as to the fitting of the foot of Williams into tracks should have been excluded and this evidence suppressed on objection of the defendants. 16 C. J. 568, sec. 1101. (e) Defendants were under arrest, coercion and duress, and naturally did what officers commanded them. They were not informed of their right to refuse to obey the officers' commands. This violated their constitutional right, as protected by Sec. 23, Art. 2, Constitution. The act was not voluntarily done. State v. Lamb, 28 Mo. 218; State v. Newcomb, 119 S. W. 408; State v. Young, 119 Mo. 518; 16 C. J. 566, sec 1097; 16 C. J. 717, 723, secs. 1468 to 1482; State v. Ellis, 242 S. W. 955.     (2) The evidence is insufficient to sustain a conviction and the demurrer to the evidence should have been sustained.     Suspicion, however strong, is not sufficient to sustain a conviction. State v. Buckley, 274 S. W. 74; State v. Hollis, 284 Mo. 627, 225 S. W. 225; State v. Bowman, 243 S. W. 110; 3 Rice on Crim. Evidence, 561; State v. Goodson, 209 Mo. 321; State v. Tullo, 274 S. W. 469.

*Robert W. Otto,* Attorney-General, and *Harry L. Thomas,* Special Assistant Attorney-General, for respondent.

(1)   The trial court properly overruled defendant's motion to suppress the evidence.     The sheriff had a proper warrant for the arrest of the defendants and having legally placed them under arrest had the authority to make the search; and such search was no violation of their constitutional rights.     State v. Jones, 153

Mo. 457; State v. Sharpless, 212 Mo. 176; Weeks v. United States, 232 U. S. 392; Wharton's Criminal Procedure (10 Ed.) sec. 97. This search was not conducted under an illegal search warrant for the purpose of obtaining evidence upon which to base a future charge, nor a search without any warrant, but was a proper and legal search of the parties at the time and place of a legal arrest, which has uniformly been held to be proper. State v. Lock, 302 Mo. 425; State v. Owen, 302 Mo. 348. If the defendant, as a witness in his own behalf, admits in his testimony the only fact which the State has proved (in this case that the shotgun had been recently discharged) as the result of a search of his home without a search warrant, such proof by the State is without harm to the defendant and is, therefore, not reversible error. 1 R. C. L. Supp. 476 (136 Pac. 982). (2) Defendant Williams voluntarily placed his foot in the track indicated when directed to do so by the sheriff. He was in no way threatened nor forced to comply with the direction of the sheriff. The admission of this testimony was not reversible error. State v. Sexton, 147 Mo. 101; State v. Jones, 153 Mo. 457; Bishop on Crim. Proc., sec. 211. Even if the court had erred in the admission of this testimony, it was patently harmless error, as the jury acquitted defendant Williams. (3) This court will not invade the province of the jury, and where there is substantial evidence to support the verdict, the finding of the jury will not be disturbed by the appellate courts. State v. Sharpless, 212 Mo. 207; State v. Pfeiffer, 277 Mo. 213. The defendant waived his demurrer, filed at the close of the State's evidence, by introducing testimony. State v. Lackey, 230 Mo. 707. The court properly overruled defendant's demurrer filed at the close of all of the evidence. The State had made a prima-facie case. (4) Evidence as to other crimes is generally competent to prove the specific crime if it shows motive, etc. State v. Lewis, 181 Mo. 235; State v. Bailey, 190 Mo. 280; State v. Hyde, 234 Mo. 224; State v. Lewis, 273 Mo. 530; State v. Weismann, 238 Mo. 547. (5) The movements, appearance

and bearing of the accused and his behavior when charged with a crime or confronted with the consequences or with the scene or surroundings of the crime with which he is charged, are always relevant as tending to show a consciousness of guilt. State v. Daly, 210 Mo. 664; State v. Gordon, 253 Mo. 510; State v. Prunty, 276 Mo. 376.

RAILEY, C.—On April 6, 1925, the Prosecuting Attorney of Dent County, Missouri, filed in the circuit court of said county a verified information, which, without caption, signature and jurat, reads as follows:

"Clyde C. Cope, prosecuting attorney within and for the County of Dent and State of Missouri, upon his oath of office, information and belief, informs the court that Willie Capps and Dewey Williams, on or about the 18th day of February, 1925, at and in the County of Dent, and State of Missouri, in and upon one Eli Cook, with deadly weapons, to-wit, firearms loaded with gunpowder and metallic balls, feloniously, willfully, on purpose, and of their malice aforethought did make an assault, with the felonious intent then and there the said Eli Cook feloniously, willfully, on purpose and of their malice aforethought to kill and murder, and the said Willie Capps and Dewey Williams with said deadly weapons, to-wit, firearms loaded with gunpowder and metallic balls, then and there, feloniously, willfully, on purpose and of their malice aforethought did shoot at, against and into the said Eli Cook, then and there inflicting in and upon the leg of said Eli Cook with the firearms and metallic balls aforesaid certain wounds, with the felonious intent then and there the said Eli Cook feloniously, willfully, on purpose and of their malice aforethought to kill and murder, against the peace and dignity of the State."

Defendant was arraigned, and entered a plea of not guilty. On the same day he filed a motion to suppress certain evidence, which was overruled and, if necessary, will be considered later. The case was tried before a

jury and on April 9, 1925, the following verdicts were returned:

"We, the jury, find the defendant, Willie Capps, guilty of assault with intent to kill, with malice aforethought, as charged in the information, and assess his punishment at imprisonment in the State Penitentiary for a term of five years.

"J. W. STEPHENS, Foreman."

And

"We, the jury, find the defendant, Dewey Williams, not guilty.

"J. W. STEPHENS, Foreman."

Defendant Capps, in due time, filed a motion for a new trial, which was overruled. Thereafter, having been granted allocution, judgment was rendered against appellant on April 11, 1925, sentence pronounced in conformity with said verdict, and an appeal was granted him to this court.

We have carefully read the argumentative statement in appellant's brief covering twenty-four pages, which will be considered as a part of appellant's brief in passing upon the merits of the case.

Rule 15 of this court, among other things, provides that: "The brief for appellant shall distinctly allege the errors committed by the trial court, and shall contain in addition thereto: (1) *a fair and concise statement of the facts of the case without reiteration, statements of law, or argument;*" etc. (Italics ours.)

Upon examination of the record, we find that counsel for respondent have made a fair, full and substantial statement of the facts, which we hereby adopt, as follows:

F. M. Capps, his wife, and his son, Willie Capps, appellant herein, for about eight years prior to the time of this trial, had lived in the same house in the vicinity of the village of Montoc (or Montauk), Dent County, Missouri. Dewey Williams, a son-in-law and one of the defendants herein, and his wife and child had lived with them only about a month just preceding the alleged crime. The house of Eli Cook, prosecuting witness herein, was

about one-half mile southeast from the Capps home. Mr. Cook had been living in this latter house about fourteen months at the time of the assault. This neighborhood lies in the Current River valley, a rough country of deep ravines and heavily wooded hills, interspersed here and there with small clearings or fields. On or about December 24, 1924, a mule belonging to Eli Cook had been shot, and a complaint had been filed before a justice of the peace, charging Willie Capps with the shooting. A warrant was issued on this complaint, but was still unserved at the time of the commission of the crime herein. The facts concerning the complaint by Cook and the issuance of the warrant were conveyed to Willie Capps and in response to that information he uttered much bad language and some threats against both Eli Cook and one Less Rogers. This condition of affairs existed at the time of the commission of the offense. About nine o'clock on the morning of February 18, 1925, a Ford touring car containing Leslie Rogers and Eli Cook in the back seat and Frank (or Wess, as he is sometimes called) Rogers in the front seat, driving the car, left the home of Eli Cook, bound for Salem, Missouri. The side curtains were not up on the car, so that the view into and out from the car was unobscured. The road from Montoc to Salem ran in a northwesterly direction past the homes of Less Rogers, Eli Cook, F. M. Capps, Mrs. Nancy Razor, Floyd Razor, Joe Hunter, respectively, up over what is known locally as Monte Hill, and on into Salem, some nineteen or twenty miles distant from the village. The road, where it passes the Capps home, leads through a cut bank, and back up on this bank, about twenty-five yards and in plain view from the road, are the barns and outbuildings of the Capps home. As the car, containing the two Rogers men and Cook, neared the Capps place, they observed Willie Capps on horseback, driving some stock down this road toward the Current River. As the car approached, Willie Capps was seen to turn his horse back up this bank and ride over toward the barn and engage in conversation with F. M. Capps and Dewey Williams, who were standing

311 Mo. Sup.—44.

there. No greeting was exchanged by anyone of the two parties, although the car, in passing, brought them within a few yards of each other. The car proceeded on into Salem, arriving there about noon. They started on their return journey home about half past three o'clock in the afternoon of the same day. Frank Rogers sat in the front seat and drove the car; his father and Eli Cook occupied the rear seat. As they reached the top of Monte Hill the sun was just setting and, the evidence shows, the time was about five-thirty o'clock in the evening. The road on which they were traveling led down this long, steep hill and into a valley surrounded by high, brush-clad hills, with deep-timbered ravines running back at intervals from the road. The road down this hill runs south and at the foot of the hill turns west into another valley. The car descended this hill. While traveling in a westerly direction, about three hundred yards from the foot of the hill, and while crossing a rough gully in the road, Cook, who was sitting on the left-hand side of the rear seat, felt a shock in his leg. At the same instant he heard a peculiar noise. He thought one of the tires had blown out. The car had come to a stop, and Frank Rogers, turning around towards Rogers and Cook, noticed that his father had been shot in the leg. Investigation disclosed that Cook, too, had been shot. A ball had struck half-way down the rear door, completely penetrated Cook's leg and, ranging downward, had entered and lodged in the leg of Rogers. This ball was afterward found in and removed from Rogers's leg, about two and a half inches above the ankle joint. This ball was a steel ball-bearing about the diameter of a dime, taken possibly, according to witnesses, from a motor truck or mowing machine. Another ball struck just in front of the wind shield of the car, ranged downward, cut the electric wiring in the car and lodged against the inside frame of the car against the metal of the right front door. This was a lead ball. Both men rolled from the car and for a few minutes were busy ascertaining the extent of their injuries. They then looked carefully in the direction from which the shots had

evidently come, but could not see anyone or hear anything suspicious. It was rapidly getting dark and as they could not start the car they started to walk to the nearest house, Joe Hunter's, for assistance. This house was about a quarter of a mile from where the car was stalled. Cook was able to walk the distance, but the ball had shattered the small bone in Leslie Rogers's ankle and it was found necessary for his son to carry him. It was dark when they reached the Hunter home. There they were helped into a wagon and taken to their respective homes. A light was burning in the Capps house when they passed it. Both Leslie Rogers and Eli Cook were taken to Salem that night and there their wounds were dressed by Dr. J. C. Welsh. Dr. Welsh testified that he dressed Eli Cook's leg; he found a flesh wound four and a half or five inches above the ankle "in the right leg, entering from the left side and had the exit on the right side." As to the wound of Leslie Rogers he found that "he had a wound of a serious character, as the tibia bone was broken, shattered in the leg, and the ball had entered his leg probably half the distance above the ankle as to what Cook's was made, by what looked to be a large ball." He extracted this ball from Rogers's leg. The ball was a steel ball. The ball was introduced in evidence. All this occurred on February 18, 1925.

On the following morning Frank Rogers, in company with Herbert Stephens, John Baine, Eli Cook and Lee Jackson, went to the scene of the shooting. There, in the direction from which the shots were fired, to the south of the road, two ravines coming together had their intersection at the road. From this intersection a deep ditch ran across the road. The car was stalled in this ditch. These two ravines formed a ridge between them about forty or fifty feet high, and on this ridge, after a search, they found a barricade or blind had been built. They had with them a ball of string and by measurement they found that it was approximately seventy-seven feet from this blind to the car. The shots had evidently been fired from this blind. The blind or barricade, as it is variously

described, had been built in front of an old log from which branches protruded. One pine branch had been laid from some of these branches to an old stump which stood in front of the log, forming, as some of the witnesses described it, an arbor. For a distance of twenty or thirty yards around this blind, pine brush had been cut and placed in front of the arbor, forming a screen between the road and the log. Two openings had been left in this screen, through which, down a vista, the road could be observed by one sitting on the log. This, according to all of the testimony on the subject, was the only spot, on account of the thick brush and timber of the vicinity, from which the shots could have been fired to have struck the car in the manner and at the angles heretofore described. In front of this log and around the blind they found some footprints or tracks, some of which were made by overshoes and the others, as the witnesses described it, by plain shoes. These tracks led from the blind up over the hill and in the direction of the defendant's home. The pine brush used in the construction of this blind had evidently been cut with knives, and, according to the testimony, several of the branches were scarred where they had been severed, and showed that the blade of the knife used thereon must have had a gap or nick in it. This was observed by all of the witnesses for the State. The witnesses estimated that two men, working with knives, could have constructed this barricade or blind in thirty minutes. The tracks back of the screen seemed to indicate that two men had sat on the log, directly behind the two holes in the screen. Another pine limb had been laid across the limbs extending out from and was parallel with the log. This limb had been rubbed in two places, as the sheriff described it, as though it had been used for a rest for two guns to be shot over. The tracks were almost identically described by all of the State's witnesses—one set of tracks made by overshoes and one set by ordinary shoes. The distance from this blind to the house of the defendants is variously estimated at from a mile and a quarter to a mile and a half. It is

admitted by the defendants that on the day of the crime Dewey Williams wore the same overshoes that he had on when arrested, and that Willie Capps wore no overshoes on that day.

On the same morning, February, 19, 1925, a warrant was issued for the arrest of Willie Capps and Dewey Williams for assaulting Eli Cook. This warrant was delivered to John Welsh, Sheriff of Dent County, who, accompanied by his deputy, Bill Eaves, went to the home of F. M. Capps, and, after reading to them the warrants, placed them under arrest. After the sheriff had placed them under arrest, he indicated that he would like to examine their firearms. He was taken into the house and, after examining several shotguns, and other arms, he found that the right barrel of one of the shotguns, a double-barrel twelve-guage, had been recently discharged. This gun he took with him and it was introduced in evidence at the trial of the case. When the defendants were searched they were each found to have in his possession a pocket knife. The knife found in the possession of Willie Capps had a gap or nick broken in the blade. After the examination of the guns, the sheriff and his deputy took the two defendants to the scene of the crime. There, on the order of the sheriff, Dewey Williams, who was wearing overshoes, placed his left foot in one of the tracks behind the blind. The foot, with the overshoe on, fit the overshoe track exactly. The defendants were then taken to the jail in Salem, and, on the 23rd day of February, 1925, made separate respective statements in the presence of the sheriff and prosecuting attorney, but out of the presence of each other.

Willie Capps in his statement, traced his actions from early in the morning until a time long after the shooting. He had noticed the car passing toward town, and stated that about eleven o'clock A. M. his dogs treed a squirrel near the house where he was working. He shot the squirrel by firing the right-hand barrel of the double-barrel shotgun later taken from him by the offi-

cers. This was the only shot fired near that place that day. The squirrel was cleaned by Dewey Williams, and was eaten by them for supper. Capps denied any knowledge of the crime or of the blind.

The statement of Dewey Williams was substantially the same, except that he shot the squirrel treed by the dogs about three o'clock in the afternoon. He fired the right-hand barrel of the shotgun. He cleaned the squirrel and it was eaten for supper, it being the only squirrel that they had on the premises that day.

The evidence for the State further showed that some time prior to the commission of the crime, one evening in John Hume's store in Montoc, Willie Capps stated to a crowd of men gathered there, that he and Dewey Williams had, with a shotgun loaded with ball-bearing out of an old mowing machine, shot the foot of a fox and tracked him to his cave. There was an old mowing machine at the Capps farm. He also told Leslie Razor, about two weeks prior to the assault, that he and Dewey Williams had, with a shotgun loaded with ball-bearing, killed two foxes and crippled another.

This was substantially all of the testimony for the State.

The defendants for their main defense interposed an alibi, the evidence in support of which is as follows:

The morning of February 18, 1925, and until about three-thirty in the afternoon of that day, was spent by the defendants and F. M. Capps in butchering and storing away the meat of a hog. During the process of butchering and while they were waiting for water to heat for scalding the hog, Willie Capps took a shotgun (the gun introduced in evidence by the State) and went into the timber a short distance from the house and killed a squirrel. After the meat had been dressed and carried into the house Willie Capps mounted his horse and rode over to Mrs. Nancy Razor's house to see about some horseshoes, and left Mrs. Razor's house on his return homeward after four o'clock. During the time Willie Capps was making the trip to Razor's and be-

fore his return home, Dewey Williams heard the dog tree a squirrel and he took the shotgun (the same gun as used by Willie Capps and which was later introduced in evidence by the State) and killed a squirrel. Willie Capps arrived home from Razor's between four and five o'clock, and the family proceeded to accomplish the chores. Dewey Williams did not leave the home place during the course of the day. After the chores were finished they ate supper by lamplight. Both defendants denied they had been at or in the vicinity of the "blind" on the 18th of February.

The defense further attempted to show that the life of Eli Cook had been theretofore threatened by one Bill Faust and by one Anville Berry, and further attempted to prove that the gap in the blade of Willie Capp's knife was made on the morning of February 19, 1925, the morning after the alleged assault.

The defense offered eight witnesses to prove the good reputation of defendants in the community, as peaceful, law-abiding citizens, and also touching their reputation for truth and veracity. The State offered the testimony of three witnesses to prove that the reputation of F. M. Capps for truth and veracity was bad.

I. The information in this case substantially follows the language of Section 3262, Revised Statutes 1919, and is sufficient as to both form and substance. [State v. Anderson, 274 S. W. (Mo.) 19; State v. White, 274 S. W. l. c. 18; State v. Lemon, 263 S. W. (Mo.) 186; State v. Crawford, 262 S. W. (Mo.) 700 and cases cited; State v. Walker, 248 S. W. (Mo.) l. c. 948-9; State v. Hubbs, 242 S. W. (Mo.) l. c. 678-9; State v. Foster, 281 Mo. l. c. 623; State v. Baird, 271 Mo. l. c. 13-14.]

II. It is contended by appellant that his demurrer to the evidence at the conclusion of the whole case should have been sustained.

The statement of facts made by counsel for the State heretofore set out, is so full and complete that it

is only necessary to refer to the evidence again in a general way.

It appears from the testimony, that defendant and the prosecuting witness, Eli Cook, lived in the same neighborhood on separate farms; that some of Cook's stock had been trespassing upon the land of the Capps; that one of Cook's mules was shot, and a warrant was sued out charging appellant with the shooting; that by reason of the foregoing, defendant used some very profane language in speaking of Cook; that on the evening of the shooting, Cook and his companions were returning home near sundown in an automobile, and when same distance from appellant's home, one or more shots were fired from ambush, one leaden ball striking the car near the windshield, and the other, a steel ball about the size of a dime in diameter, passed through the leg of one of the occupants of the car, and injured one of his companions; that those in the car saw no person near the scene of the shooting; that a warrant was issued for the arrest of defendants, and they were taken into custody by the sheriff, charged with said shooting; that the officer arresting defendants was shown ten or twelve guns at the Capps home; that he found one rickety shotgun which indicated that the right barrel had been recently shot. In this connection, the appellant and his father both testified that Willie Capps had shot a squirrel with this gun in the forenoon of the day of the tragedy. This gun, over the objection of defendant, was used as evidence at the trial.

The State offered testimony tending to show that a knife, with a nick in one blade, had been taken from defendant by the sheriff, and was used, by the latter and others, in experimenting with the cutting of brush, which was found in and near a blind close to the scene of the shooting, and which was supposed to have been the place from which the fatal shots were fired. These witnesses undertook to connect appellant with the crime charged, by showing the brush indicated, that some of it had been cut with a knife blade containing a nick, and that this brush was converted into a blind, from which the shots were fired.

Some other testimony of a similar character was produced by the State, but no witness testified that appellant was seen near the place where the shooting occurred on the afternoon of that day. No one testified to any admissions made by appellant tending to show that he did the shooting. Both defendants positively denied that they did the shooting. Taking into consideration the foregoing, in connection with all the facts previously set out, we are of the opinion that the case was submitted to the jury upon mere conjecture and speculation, without substantial evidence to sustain the conviction. [State v. Morney, 196 Mo. l. c. 49; State v. Hollis, 284 Mo. 627; State v. Singleton, 294 Mo. 346; State v. Bowman, 294 Mo. 245; State v. Goodson, 299 Mo. 321; State v. Tallo, 308 Mo. 584; State v. Buckley, 274 S. W. (Mo.) 74.]

The strained relations between Cook and appellant, growing out of the mule transaction, in connection with the profane language used by appellant in speaking of Cook, might doubtless be considered as evidence tending to show a motive for the commission of the crime. In a case of this character motive in only one of the links in the chain of circumstances to be established by evidence.

In State v. Ruckman, 253 Mo. l. c. 499 (quoted with approval in State v. Singleton, 294 Mo. l. c. 361), we said: "Evidence of motive is admissible, as furnishing one link in the chain of circumstances, tending to establish guilt, but mere showing of motive, uncorroborated by other facts and circumstances inconsistent with innocence, is not sufficient prima-facie showing to authorize the submission of defendant's guilt to the jury. If would be a rather unjust and dangerous rule that held that the mere showing of motive and opportunity would overcome the presumption of defendant's innocence and establish, beyond a reasonable doubt, his participation in the criminal act. Aside from the showing of a possible motive, there is no other fact or circumstance, which, in any way, points towards defendant's guilt."

The evidence discloses, that after the sheriff arrested appellant, he indicated to the latter that he would like to examine his firearms. The sheriff was then invited to come into the home of defendants, and was voluntarily shown a number of guns, among which was a defective one, in which the right barrel had been recently discharged. This testimony was of little probative force in connecting appellant with the crime, in the light of the presumption of innocence which attended him throughout the trial, in addition to the positive testimony of appellant and his father that this gun had been fired in the forenoon of the day of the homicide by appellant in killing a squirrel. The sheriff likewise took from appellant a knife with a nick or dented blade, and used this successfully in piling up one inference on top of another in establishing defendant's connection with the crime. Tht scene of the shooting was quite a distance from defendant's home. Evidence was offered tending to show that some of the brush had been cut with a knife containing a nick or dent in the blade. The jury were left to draw the inference that appellant's knife must have done the cutting. The evidence further disclosed that this brush, thus cut, was used in making a blind, and the jury were authorized to draw the additional inference that said blind was intended as a place to hide. The jury were then authorized to draw the still further inference from the preceding facts that appellant, with this dented knife blade, cut the brush that made the blind that was used by appellant in shooting Cook. This evidence, at best, simply disclosed that it might have been possible for defendant to have shot Cook from this blind. It is purely conjectural in its nature, and arrived at by building one inference upon another, as above stated, to reach a conclusion, which is not permissible under the well settled rulings of this court. [Yarnell v. Ry. Co., 113 Mo. l. c. 580; Swearingen v. Railroad, 221 Mo. l. c. 659; Hamilton v. Railroad, 250 Mo. l. c. 722; Phillips v. Ins. Co., 288 Mo. l. c. 185 and cases cited;

State v. Capps.

Strother v. Ry. Co., 188 S. W. l. c. 1105; State ex rel. Mo. Pub. Utilities Co. v. Cox, 298 Mo. l. c. 433-4.]

Keeping in mind the presumption of innocence with which the law clothed defendant throughout the trial, it is manifest from reading the entire record, that the observations of WILLIAMS, J., in State v. Ruckman, 253 Mo. l. c. 501, quoted with approval by BLAIR, J., in State v. Buckley, supra, at page 76, are applicable here, in which he said: ''All the facts and circumstances shown by the State's evidence could exist and yet the defendant be innocent of any crime. The evidence as a whole leaves too much room for doubt and mistake and does not possess sufficient proof of guilt to authorize the State to deprive defendant of his liberty.''

It is possible, that defendant may have been guilty of the crime charged against him, but his connection should not rest upon mere conjecture or speculation, and if permitted to stand, should be based upon more substantial testimony than that contained in this record.

The case has been ably briefed by both sides in this court, and many questions of interest discussed therein, but we do not deem it necessary to consider these matters further.'

In order that the State may be afforded an opportunity to produce additional testimony, if it has any, we will reverse and remand the cause, to be proceeded with in conformity with the views heretofore expressed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.