Florence Wills et al. v. Berberich's Delivery Co. et al., Appellants.—134 S. W. (2d) 125.

Division Two, December 14, 1939.

*Leahy, Walther, Hecker & Ely* for appellants.

618

*Edw. C. Friedewald* for respondent.

ELLISON, P. J.—The employer and its insurance carrier appeal from an award of $8150 to the dependents of a deceased employee, Arthur N. Wills, made by the Workmen's Compensation Commission and affirmed by the Circuit Court of the City of St. Louis. The error assigned is that there was no substantial evidence to support the award: because respondent failed to show Wills' death was the result of an accidental injury arising out of and in the course of his employment; and the evidence upon which the Commission made the award was incompetent and should not have been admitted. The case has been here once before, 339 Mo. 856, 98 S. W. (2d) 569. It was reversed and remanded because the Commission had excluded competent evidence.

On Saturday May 27, 1933, while repairing the top of one of the employer's delivery trucks Wills fell to the concrete floor of the garage, a distance of ten or twelve feet, and sustained certain in-

juries which will be detailed later. For some four days prior to that he had had a boil or pimple on his chin about one-half inch to the left of the midline and equi-distance between the lip and the lower part of the jaw. It had given him no trouble and he had covered it with a gauze pad secured by adhesive tape, commercially known as Band-Aid. According to the testimony of Dr. Bardenheier, physician regularly retained by appellants, Wills first complained to him about the boil on Monday, May 29, two days after his fall. At that time it was about the size of a dime. The next day it had increased to the size of a quarter. On Wednesday afternoon, May 31, it was as big as a silver dollar. That night the patient suffered pleuritic pains in the right lower chest. On Thursday, June 1, the boil was much larger and involved the gland beneath the jaw. From then on until Saturday June 3, the infection spread, the patient became extremely toxic, and died at 8 o'clock that night, just a week after his fall. It is conceded by the parties that death was caused by septicema originating in the boil. The only question in the case is whether the fall and the effects thereof aggravated the infection, made it spread, and thereby was an efficient contributing cause of death.

In falling from the top of the truck Wills struck his left elbow on the tail-gate, which was partly open, and his left shoulder on the concrete floor. No witness saw him fall, but he so declared in a written statement given to John P. Dockery, claim agent for the insurer, which all parties to the litigation accept as true. There is no other evidence as to his posture when he landed on the floor save that to be gleaned from the location and character of his injuries.

He was taken to Dr. Bardenheier's office and thence to his home within a half-hour or so after the accident. The doctor found no injury to any part of his body except a contusion of the left shoulder and an abrasion of the left elbow. He complained of pain only in those regions. There were no marks or scratches on his face. Dr. Bardenheier testified he noticed the gauze patch on Wills' chin and therefore asked him if he had struck his cheek or any part of his face when he fell. Wills answered in the negative and stated the boil was not involved in the accident. For that reason the doctor did not examine it that day or the next day, but only after Wills requested him to do so two days later on May 29. Wills' written statement to claim agent Dockery also disclaimed any injury to his chin in the fall, and he made the same statement orally. Dockery saw no bruises, contusions or scratches on his face. Witnesses Metz, Cashel and Lessing, all fellow employees saw Wills shortly after he fell, and none of them noticed any scratches on his face. Dr. Morfit was called into consultation on Saturday, June 3, the day Wills died and discovered no evidence of external injury in the infected area.

On the other hand, Mrs. Florence Wills, widow of the decedent, swore that when he was brought home shortly after the accident there

was a scratch on the left side of his face. (Appellant objects to this testimony on the ground that there was no evidence connecting the scratch with the fall.) She further testified he carried his head inclined to the left and complained of pain about his face, chest, left shoulder and arm. The dressing on the boil was not the same one that was there when he left home that morning. During the next three days he favored his left side and complained about his shoulder and face. On one occasion when she saw the boil dressed "there was still a little scrape like." Thursday was the day when his face began to show marked inflammation. The left side of his face swelled considerably and the infection spread to his neck and left shoulder.

John W. McCaffrey, a brother of Mrs. Wills, saw Wills the day after he fell. In helping him move his pillow the witness noticed some abrasions, two or three little scratches, on the side of his face. (Objection was made to this testimony also, on the ground that no causal connection was shown between the scratches and the fall.) The scratches had not been there when the witness saw Wills before he fell. Mr. McCaffrey did not mention them when he testified at the coroner's inquest. This witness and two others, Jerry Riehl and Granville Organ, who saw Wills on Sunday, May 28, the day after he fell, all thought the gauze patch on his chin was different from the one he had been wearing theretofore—in other words it had been changed. This evidence is to be considered in connection with Dr. Bardenheier's testimony that he did not treat the boil until *Monday*.

Regarding the general effects of the fall, and whether it caused shock to deceased. William Metz, a fellow employee, took Wills to Dr. Bradenheier's office and home within a short time after the accident. Metz testified he had to assist Wills into the automobile and into the house. Mrs. Wills said when her husband was brought home he was pale and cold, and was wearing an extra coat, though it was a warm day. They put him to bed immediately. He remained in bed that day and all of the next day (Sunday) except during lunch time. On that occasion he was helped to the dining table. Monday, Tuesday and Wednesday he stayed in bed except for an interval of two hours or more each day when he was at the doctor's office. On the last mentioned date he drove his own car from his home to the home of his brother-in-law McCaffrey, where he laid down a while and then proceeded to the doctor's office. Witness Riehl, who saw him on that trip said he was "kinda stooped over." He continued to be weak and from Wednesday on until his death was confined to bed. Witnesses McCaffrey, Riehl and Organ all visited Wills on Sunday, May 28, the day after the accident and found him in bed. The former two said he was pale and declared he looked as if he "had been shaken up a bit." To the contrary Dr. Bardenheier expressed the opinion that Wills did not appear to be suffering from shock

when he first saw him, or at any time afterward. However, he prescribed a narcotic to relieve pain. He said the injured man's shoulder and elbow were better by Wednesday, and Wills' brother-in-law McCaffrey testified "we all" thought he was getting along much better after Tuesday, with reference to his left side.

Wills was forty-two years old when he died, five feet ten inches tall, and weighed 180 pounds. His wife testified he was in good health, so far as she knew, before he fell. From external appearances his body was well nourished, but a post-mortem examination disclosed: some hardening of the arteries; degeneration of the heart muscles and valves, called chronic myocarditis; obliteration of the cortical markings on the kidneys, indicating chronic nephritis; and cirrhosis of the liver.

Now as to the expert testimony. Dr. Walter J. Siebert and Dr. A. H. Diehr, both of St. Louis, were produced as witnesses for respondents. Their qualifications as experts were not challenged. Both testified in answer to the same hypothetical question. Neither saw or treated Wills, but both gave it as their opinion that there was a causal relation between his fall from the truck and the spread of the infection which resulted in his death. Neither physician thought the mooted question whether he struck and scratched his cheek in falling was vital to that conclusion, though both conceded it was an important factor to be considered. Their theory of the accident and its fatal consequences was as follows.

Ordinarily, when a boil starts on the body nature localizes the infection by throwing around it pyogenic membrane composed of coagulated material drawn from the blood. This forms what is called an indurated area, being the hard ring or swelling surrounding the boil. The protective wall may be broken by a direct wound or blow, called trauma, or by a muscle pull, or by lowered resistance of the system, due to lack of sleep, poor nourishment, shock or disease, thereby permitting the infection to escape into the blood stream. There is a superficial muscle known as the platysma myoides which runs from the left shoulder up the neck and over the jaw bone to the left angle or corner of the mouth. A chart was introduced in evidence showing this and other related muscles. Infection usually spreads along the fascia or loose tissue sheathing the muscles.

It was Dr. Siebert's opinion that Wills' fall from the top of the truck to the concrete floor, landing on his shoulder, must have caused at least some slight trauma to his face or chin, but that whether it did or not, the blow to and contusion of the shoulder would necessarily result in spreading and stretching of the muscle running to the chin. He thought the escape of the infection was much more likely to have resulted from the violence accompanying the fall than from ordinary musclar activity, low resistance or disease, especially in view of the fact that the infection had been taking care of itself before the fall.

He believed the diseased condition disclosed by the post-mortem examination would lower Wills' resistance to the effects of the fall, rather than constitute an independent cause of the spread of the infection. Dr. Diehr's views coincided generally with those of Dr. Siebert except that he thought the muscle pull affecting the boil might have been through the deeper muscles in the neck, as well as the platysma muscle. He also said the time elapsed between the rupture of the indurated area and the flaring up of the septicemia might be anywhere from 24 hours to five, six, seven or eight days.

The opinion of the physicians called as witnesses by appellants was that there was no connection between Wills' fall and the spread of the infection. Dr. Bardenheier said the injury to his shoulder and the shock of the fall could not affect the boil sufficiently to make the infection escape into the blood stream. To do that the trauma would have to be directed to the indurated area, and he based his testimony on the theory that there was no injury in that region. He also said if the fall had caused spread of the infection it would have shown up in forty-eight hours. In his opinion, if Wills' face close to the boil had been injured by the fall he (Wills) would have known it, though he conceded Wills might not have complained of an injury at that place if it were slight and other parts of the body (such as the shoulder and arm) were more painfully injured. He also conceded that if Wills did complain of pain in the face within an hour after the fall (as Mrs. Wills testified) it would be evidence of trauma in that region which might cause spread of the infection from the boil. Dr. Funsch was of the same negative opinion. He said injury to the shoulder in the fall would not affect the boil; that the platysma muscle runs from the shoulder to the lower border of the jaw, not to the chin, and falling on the shoulder would tend to relax that muscle rather than to stretch it. Dr. Harris and Dr. Morfit concurred generally in these views. The testimony of all these physicians was based on the assumption that Wills did not strike or injure his face when he fell.

Appellants concede, as they must, that we cannot overturn the award of the Workmen's Compensation Commission in favor of respondents if there was substantial competent evidence to support it. [Sec. 3342, R. S. 1929, Mo. Stat. Ann., p. 8275.] The decisions in this State on the point are so numerous that we need only cite 29 West's Mo. Dig., Pocket Part, section 1939.

But they insist there was not sufficient substantial evidence to support the award because competent proof was lacking of any trauma, direct or indirect, to the chin of the deceased. In so arguing appellants rely on the opinion testimony of their experts that the injuries to Wills' shoulder and arm would not cause infection to spread from the boil on his chin; and that that result could follow only from some kind of trauma to the indurated area. This contention is untenable

for two reasons: first, because there was substantial testimony to the contrary from respondents' experts, that the injury to Wills' shoulder could and more likely did cause muscle pull through the platysma and other muscles, which would rupture the protective wall around the boil; and second, because Mrs. Wills and Mr. McCaffrey testified that after the fall there were scratches on Wills' cheek which had not been there before, and that the boil had been dressed (by Dr. Bardenheier) on the day of the accident, thus indicating he had sustained injury close to the boil.

At the trial appellants objected to the testimony about these scratches, asserting there was no evidence connecting them with Wills' fall. When the case was here before we held this evidence competent, 339 Mo. l. c. 860(4), 98 S. W. (2d) l. c. 571(5), and we see no reason for changing our views on the question now. If abrasions and contusions found on Wills' arm and shoulder shortly after he fell are to be regarded as injuries resulting from the fall, why should the same not be true of scratches on his face found about the same time? It is true Wills stated he was injured only in the shoulder and arm, but he evidently did not know about the scratches on his cheek, if they were there; and Dr. Bardenheier admitted this would be possible, if the shoulder and arm injuries were more painful and wholly engaged Wills' attention. However, since the weight of evidence is against respondents on this issue, and the decision need not rest entirely upon it, we shall consider appellants' further contentions.

They urge that no finding of a causal connection between Wills' shoulder injuries and the spread of the septicemia can be made without piling inference upon inference in violation of the rule announced in Cardinale v. Kemp, 309 Mo. 241, 276, 274 S. W. 437, 448, and other like cases.* It would require, they say, the construction of the following chain of inferences: (1) that the fall and resulting shoulder injury caused a muscle pull extending from the shoulder to the indurated area; (2) that the muscle pull was of sufficient strength to rupture the protective wall around the boil and permit the infection to escape; (3) that the infection did escape and spread; (4) that death resulted from this systematic infection.

The rule prohibiting the piling of inferences is applied when necessary to guard against attenuated reasoning, as where an initial inference is drawn from a fact, and other inferences are built solely

*Strother v. C., B. & Q. Rd. Co. (Mo. Div. 2), 188 S. W. 1102, 1105; Phillips v. Travelers Ins. Co., 288 Mo. 175, 185, 231 S. W. 947, 949; State ex rel. v. Cox, 298 Mo. 427, 435, 250 S. W. 551, 553; Layton v. Chinberg (Mo. Div. 1), 282 S. W. 434, 436; State v. Capps, 311 Mo. 683, 698, 278 S. W. 695, 699; State ex rel. City of Macon v. Trimble et al., 321 Mo. 671, 681, 12 S. W. (2d) 727, 731 et seq.; State ex rel. City of St. Charles v. Haid, 325 Mo. 107, 120, 28 S. W. (2d) 97, 103; Bollinger v. St. L.-S. F. Ry. Co., 334 Mo. 720, 727, 67 S. W. (2d) 985, 988.

and cumulatively upon the first, so that the conclusion reached is too remote and has no sound logical foundation in fact. [Morris v. DuPont de Nemours & Co., 341 Mo. 821, 833, 109 S. W. (2d) 1222, 1228.] But after all, the underlying question is whether the conclusion hypothesized can fairly be drawn from the proven facts by reasonably intelligent minds. [1 Jones on Evidence, Civil Cases (4 Ed.), sec. 137, p. 238.] The logical processes involved cannot be governed by an inflexible rule. As stated in 1 Greenleaf of Evidence (16 Ed.), section 14, page 36. "It is not the law which furnishes the test of relevancy, but logic." The strength of the relation between the factual premise and the conclusion is all important, even though one or more "inferences" intervene. I see a man some distance away pointing a gun at a target and see the gun fire. I say he shot at the target, though that involves the further assumption that he knew the gun was loaded; that he intentionally pulled the trigger; that the gun mechanism functioned normally, etc.

Sometimes courts hold rather summarily that the circumstances *taken as a whole* support an inference of guilt or liability without inquiring critically into the reasoning by which that conclusion is reached. Sometimes, also, it is said the same fact raises several *concurrent* inferences, thus avoiding the objection that they are piled. It is well settled that any number of inferences may be drawn in a given case so long as each has a factual foundation. [Morris v. DuPont de Nemours & Co., supra.] The doctrine has often been assailed, or limited in particular cases. [1 Greenleaf on Evidence (16 Ed.), sec. 14, pp. 36, 37; 1 Wigmore on Evidence (2 Ed.), sec. 41, p. 258; 1 Jones' Commentaries on Evidence (2 Ed.), sec. 11, p. 22; 20 Am. Jur., sec. 165, p. 169; 95 A. L. R., pp. 162, 182, note; State v. Ashcraft, 342 Mo. 608, 616, 116 S. W. (2d) 128, 132.]

In this case it was conceded by the parties that Wills fell from the top of the truck to the concrete floor, a distance of ten or twelve feet, sustaining injury to his shoulder muscles severe enough to cause contusions and call for the prescription of a narcotic to relieve pain. The testimony for respondents was that immediately after the fall he was weak, pale, lost appetite, complained of pain in his face, neck and shoulder, and that he remained in bed for the greater part of the next four days and from then on continuously until his death a week after the accident. It was conceded that at and previous to the time of the accident Wills had a boil on his chin about one-half inch to the left of the midline and equi-distant between the lip and the bottom of the jaw. The undisputed evidence showed that infection and swelling spread from the boil to the left side of his face and neck and down to the injured shoulder. Respondents' experts testified as a fact that there is a muscle called the platysma myoides which extends from the left shoulder up the neck and across the jaw to the left angle of the mouth; and that infection

usually travels along the fascia sheathing the muscles. They further testified as a fact that a shoulder injury could cause a pulling of this and other muscles breaking down the protective wall around the boil and permitting the infection to escape; and that septicemia might result as late as five to eight days thereafter. It was conceded that Wills died of septicemia originating in the boil on his chin. Dr. Bardenheier so testified. Based on these facts two qualified physicians who testified as experts for respondents expressed the professional opinion that the violent fall suffered by Wills caused the spread of the infection, or more likely did than any other facts shown in evidence.

This expert opinion was substantial evidence. [Scanlon v. Kansas City, 325 Mo. 125, 149, 26 S. W. (2d) 84, 95; Kimmie v. Terminal Railroad Assn., 334 Mo. 596, 603, 66 S. W. (2d) 561, 564.] It seems to us that all the foregoing evidence was *fact* testimony except the final conclusion or inference of the two doctors that there was a causal connection between Wills' fall and the septicemia. If this is correct, the rule against piling inferences was not violated. But if we be wrong in that, we are still unwilling to hold the factual testimony plus the opinion of respondents' experts founded thereon did not make a prima facie case for respondents. While not attempting to overrule Cardinale v. Kemp, supra, and the cases cited therewith, yet we think they should be distinguished, and limited to conform to the true doctrine that the rule against piling inferences is not a general rule applicable to all situations; but is a rule of reason governing only when the proven facts and their reasonable implications furnish no basis for agreement or disagreement by persons of average intelligence as to whether the *factum probandum* has been established. [See James v. K. C. Gas Co., 325 Mo. 1054, 1069, 30 S. W. (2d) 118, 123; Hardin v. Ill. Cent. Railroad Co., 334 Mo. 1169, 1180, 70 S. W. (2d) 1075, 1079-80.]

■ Appellants further contend the medical testimony most favorable to respondents shows the spread of the septicemia from the boil, resulting in Wills' death, may have been due to either of two causes: (1) low resistence, or disease as shown by the autopsy; (2) trauma or muscle pull occasioned by his fall from the truck. If the former was the sole cause, appellants would not be liable; if the latter was a contributing or accelerating cause, they would be. Appellants therefore invoked the rule stated in Doughton v. Marland Refining Co., 331 Mo. 280, 291, 53 S. W. (2d) 236, 241, that: "it is not sufficient for recovery to show that the injury or death complained of resulted from one or the other of two causes for one of which, but not the other the defendant would be liable."

Not doubt, where the plaintiff's evidence shows an accident was caused in one way, for which the defendant is liable, and the defendant's evidence shows it happened another way, for which he

is not liable, the question is for the jury, because the plaintiff is entitled to have the jury decide whether the defendant's evidence is worthy of belief. But when the plaintiff's own evidence, or evidence which he does not dispute, shows the casualty may have resulted from either of two or more causes, for only one of which the defendant would be liable, it has been held many times the burden is on the plaintiff to show the cause for which defendant was responsible produced the result.[1] This proposition has been amplified in numerous cases by a further pronouncement that if the evidence leaves to speculation, conjecture or surmise the question as to which was the producing cause, the plaintiff's action must fail.[2] Two of the earlier cases, since cited, say if from the evidence "the probabilities are equally strong that the damages were caused by the one as by the other," the plaintiff is "fated to failure." [Fuchs v. St. Louis, 133 Mo. 168, 197, 34 S. W. 508, 513; Epperson v. Postal Tel. Cable Co., 155 Mo. 346, 382, 50 S. W. 795, 807; Consolidated School Dist. v. West. Mo. Power Co., 329 Mo. 690, 699, 46 S. W. (2d) 174, 178.] And Coin v. Talge Lounge Co., 222 Mo. 488, 508-9, 121 S. W. 1, 6, 25 L. R. A. (N. S.), 1179, declares the plaintiff cannot recover if his evidence fails to show the damages were produced by the cause for which the defendant was liable, or at least that "the probabilities are stronger" they were so caused.

But beginning with Conner v. Mo. Pac. Ry. Co., 181 Mo. 397, 411, 81 S. W. 143, 148, a doctrine has crept into our law, which has since been followed in seven cases,[3] that: "If there is substantial evidence tending to show that an accident occurred in any one of two or more ways, or any other number of ways, while the burden rests upon the plaintiff to establish such cause of the accident as would render the defendant liable, it by no means presents a case of mere conjecture; but is a question of fact, which should be submitted and determined by the triers of the facts. *We only enter the field of conjecture in the*

1. Fuchs v. City of St. Louis, 167 Mo. 620, 635, 67 S. W. 610, 614, 57 L. R. A. 136; State ex rel. Dutcher v. Shelton, 249 Mo. 660, 698, 156 S. W. 955, 966; Holman v. Clark, 272 Mo. 266, 274, 198 S. W. 868, 870; Goucan v. Atlas Portland Cement Co., 317 Mo. 919, 931, 298 S. W. 789, 794; Doughton v. Marland Refining Co., 331 Mo. 280, 291, 53 S. W. (2d) 236, 241; Cole v. Uhlmann Grain Co., 340 Mo. 277, 289, 100 S. W. (2d) 311, 317.

2. Warner v. St. L. & M. Ry. Co,, 178 Mo. 125, 134, 77 S. W. 67, 70; Goransson v. Riter-Conley Mfg. Co., 186 Mo. 300, 307, 85 S. W. 338, 340; Graefe v. Transit Co., 224 Mo. 232, 263, 123 S. W. 835, 844; State ex rel. Bush v. Sturgin, 281 Mo. 598, 602-3, 221 S. W. 91, 92, 9 A. L. R. 1315; Hamilton v. Ry. Co., 318 Mo. 213, 134-5, 300 S. W. 787, 792; State ex rel. City of St. Charles v. Haid, 325 Mo. 107, 118, 28 S. W. (2d) 97, 102; Fryer v. St. L.-S. F. Ry. Co., 333 Mo. 740, 767-8, 63 S. W. (2d) 47, 55.

3. Mooney v. Mooney, 244 Mo. 372, 394, 148 S. W. 896, 901; Solomon v. Moberly Lt. & P. Co., 303 Mo. 622, 640, 262 S. W. 367, 372; Morrow v. Mo. Gas & Elec. Service Co., 315 Mo. 367, 382, 286 S. W. 106, 112; Schulz v. St. L.-S. F. Ry. Co., 319 Mo. 8, 21, 4 S. W. (2d) 762, 768; Thompson v. City of Lamar, 322 Mo. 514, 538, 17 S. W. (2d) 960, 970; Morton v. St. L.-S. F. Ry. Co., 323 Mo. 929, 948, 20 S. W. (2d) 34, 43; Baker v. C., B. & Q. Rd. Co., 327 Mo. 986, 1004, 39 S. W. (2d) 535, 542-3.

*absence of proof; when proof enters, conjecture disappears."* (Italics ours.)

On the theory of this last line of decisions, although respondents' evidence merely showed Wills' death might have resulted from either of two causes, for only one of which appellants were responsible, yet since the Commission found he died from the latter cause appellants have no ground for complaint. But we shall not decide the case on that theory because as a general doctrine without qualification we think it is wrong. When there is no substantial evidence tending to show the accident resulted from a cause for which the defendant is liable, *as against* some other cause shown in evidence for which he is not liable, the jury undoubtedly is left to speculation and conjecture. Even when the evidence is in equipoise *as between plaintiff and defendant,* the plaintiff has no right to recover (McCloskey v. Koplar, 329 Mo. 527, 541, 46 S. W. (2d) 557, 563, 92 A. L. R. 641), though in that situation the case is submitted to the jury and the question is covered by instructions, as for instance see Gardner v. Turk (Mo. Div. 2), 343 Mo. 899, 123 S. W. (2d) 158, 163. But if the plaintiff's own showing puts the evidence in equipoise as to whether or not the accident resulted from a cause for which the defendant is responsible, plaintiff has not made a prima facie case.

All the earlier Missouri cases cited above so declare the rule, and such is the law in other jurisdictions. [20 Am. Jur., sec. 1178, p. 1028.] But respondents' experts further testified the spreading infection which ended in Wills' death *more probably* resulted from his violent fall than from the other possible causes shown. This brings the cause squarely within the rulings in the older line of decisions, more particularly the Fuchs and Coin cases. For that reason we overrule appellants' assignment.

Finally an assignment is made that the hypothetical question propounded to respondents' experts assumed facts which were not in evidence, and omitted facts which were in evidence. Without going into detail, we shall only say that we find no reversible error on this ground. Appellants' counsel were invited to incorporate any facts they desired into the question.

Finding no reversible error, the judgment is affirmed. All concur.

