## COUNTY OF WILSON *v.* NATIONAL BANK.

1. The Circuit Court has jurisdiction of suits by or against a national bank, without regard to the citizenship of the parties.
2. A bond, whereby a county acknowledges its indebtedness in a certain sum, payable, at a time therein mentioned, to company A. or the holder, if it "be transferred by the signature" of its president, is negotiable, and, on his transfer thereof by indorsement to "bearer," the latter may in his own name sue thereon.
3. The county court of Wilson County, Tennessee, had, after certain preliminary proceedings were taken, lawful authority to subscribe, on behalf of the county, for stock in the Tennessee and Pacific Railroad Company, and to issue bonds of the county in payment therefor.

4. It was not essential to the validity of the popular election, ordered and held on the question of subscription to the stock, that there should have been a final and definite survey and location of the entire line of the company's road. All that was required was a substantial location, designating the termini and general direction of the road, and an estimate of the cost of constructing it.

ERROR to the Circuit Court of the United States for the Middle District of Tennessee.

The facts are stated in the opinion of the court.

*Mr. Joseph S. Fowler* for the plaintiff in error.

*Mr. R. McPhail Smith, contra.*

MR. JUSTICE WOODS delivered the opinion of the court.

On Dec. 16, 1867, the legislature of the State of Tennessee passed " An Act to incorporate the Lebanon and Gallatin Railway, and for other purposes."

Sect. 3 of the act provided that the twenty-six persons named in sect. 1 should select by ballot five of their number to open books for subscription to the stock of the Lebanon and Gallatin Railway Company, and to apply to counties and municipalities for subscriptions thereto. Sect. 4 declared that such subscriptions might be payable in county and municipal bonds.

Sect. 19 declared as follows : —

" The five commissioners provided for in the third section may apply to the county courts of Sumner and Wilson Counties, and to the corporate authorities of the towns of Lebanon and Gallatin for subscription to the capital stock of the company, payable in the bonds of said counties and towns, running not less than ten nor more than thirty years, bearing six per cent interest payable semi-annually, and upon said application being made in writing the county courts and corporate authorities shall cause an election to be held under the laws now in force regulating elections for county and corporate officers, first causing thirty days' notice of the day of such election, the amount of stock to be subscribed, for what purpose and how and when payable, to be given as required in county and corporate elections."

Sect. 35 declared " that the provisions of chapter 3, article 3, of the code [of Tennessee] shall be in force, and said company shall have the benefit of the same except so far as modified or changed by this act."

These provisions were by sect. 40 extended to the Tennessee and Pacific Railroad Company.

Chap. 3, art. 3, of the Code of Tennessee provides as follows: —

" SECT. 1142. Any county . . . may subscribe to stock to an amount not exceeding in the aggregate one-fifteenth of its taxable property nor more than one million dollars in railroads running to or contiguous, thereto, upon the following terms and conditions.

" SECT. 1143. The approbation of the legal voters of the county . . . to the proposed subscription must be first obtained by election held by the sheriff in the usual way in which popular elections are held. ·

" SECT. 1144. The election may be ordered by the county court upon the application in writing of the commissioners appointed to open subscription books for the stock of such road, or of the board of directors if the company is organized.

" SECT. 1145. Before such application can be made, the entire line of the road in which the stock is proposed to be taken, shall be surveyed by a competent engineer, and substantially located by designating the termini and approximating the general direction of the road, and an estimate of the grading, embankment, and masonry made by the engineer under oath, and filed with the application."

" SECT. 1149. The money raised under the provisions of this article shall be expended within the county in which such stock is taken, or as near thereto as practicable.

" SECT. 1150. As soon as the stock is subscribed it is the duty of the county court to levy a tax upon the taxable property, privileges, and persons liable by law to taxation within the county, sufficient to meet the instalments of subscription as made and the cost and expenses of collection, which tax shall be levied and collected like other taxes.

" SECT. 1151. The revenue-collector or any other person may be appointed by the county authorities to collect the railroad tax, who shall first give-bond with good security in double the amount of the instalment proposed to be received, payable to the State and conditioned to discharge the duties of the office and faithfully collect and pay over to the railroad company such railroad tax."

The suit was brought by the Third National Bank of Nashville, Tennessee, upon two hundred and ninety-four bonds for $50 each, issued, as the plaintiff claimed, by the county of

Wilson under authority of the laws above cited. The bonds were all of the same tenor and effect. The following is a copy of one of them : —

"UNITED STATES OF AMERICA.

"State of Tennessee.                    County of Wilson.

" Six-per-cent Bond.

" Subscription to the Tennessee and Pacific Railroad Company.

" Know all men by these presents, that the county of Wilson, in the State of Tennessee, is indebted to the Tennessee and Pacific Railroad Company, or the holder hereof, if this bond is transferred by the signature of the president of said company, at the office of the treasurer of said county, in the city of Lebanon, on the first day of January, 1879, with interest thereon at the rate of six per cent per annum, on the first day of January and July ensuing the date hereof, until the principal sum is paid, upon the presentation and surrender of the interest-warrants hereto attached at the said office of the treasurer of Wilson County, State of Tennessee, — this being one of a series of bonds in all amounting to $300,000 issued for stock in the Tennessee and Pacific Railroad Company.

" In testimony whereof, the county judge of said county hereunto sets his name and causes the seal of the said county of Wilson to be affixed, with the attestation of the clerk of said county, this first day of January, 1869.

                              " W. H. GOODWIN, *Judge County Court.*
"J. S. McCLAIN, *Clerk.*"

The bonds were all indorsed as follows : —

" For value received, this bond is transferred to bearer.
                    " GEO. MAURY, *President Tenn. & Pacific R. R. Co.*"

The defendant demurred to the declaration. The grounds of demurrer were, first, because the court had no jurisdiction of the case ; and, second, because no right of action on said bonds was shown by the declaration to have accrued to the plaintiff.

The demurrer was overruled.

The defendant thereupon filed twelve pleas. Demurrers were filed to all of them, and were sustained as to the fourth; fifth, sixth, seventh, eighth, ninth, and tenth, and overruled as to the others.

The ninth plea, upon which the defendant specially relied, and which contains the substance of all the other pleas to which the demurrer was sustained, reads as follows:—

" And for a further plea to said first count in plaintiff's dec laration, defendant says that before application was made by any authorized commissioners or by the president and directors of the Tennessee and Pacific Railroad Company to the county court of said county of Wilson, to order an election to obtain the approbation of the legal voters of said Wilson County to any proposed subscription of stock in said company, no survey of the entire line of said road had been made by a competent engineer, and the said road had not been substantially located by designating the termini thereof and approximating the general direction thereof, and no estimate of the grading, embankment, and masonry by a competent engineer of the entire road had been made, and of all said facts the plaintiff had actual notice when it obtained the said bonds; and it does not appear upon the face of said bonds or any of them upon what authority they were executed and delivered to the said company other than that of the ministerial officers whose signatures appear thereto; and this defendant is ready to verify."

The ground of demurrer to this plea was that it was virtually the plea of *non est factum* and was not sworn to.

Upon the trial of the case the plaintiff offered in evidence the bonds on which the suit was brought, and proved their execution by the officer whose official signature was appended to them, and by the impression on them of the county seal, and proved the indorsement of them by George Maury, the president of the Tennessee and Pacific Railroad Company. The plaintiff also read the acts of the legislature of Tennessee above mentioned, and rested.

Thereupon the defendant introduced one Falconett, who testified that he was engineer of the Tennessee and Pacific Railroad Company; that as such he had made an experimental survey of the entire line of the road from Nashville to Knoxville, before any application was made to the county to order an election, as provided by the statute, to determine whether it should subscribe to the capital stock of the company, and, if so, on what terms the subscription should be

made; that the survey of one hundred and eighty-one miles was not final, but that by it the line was substantially, and the main points of said road definitely, located, and an approximate estimate of the cost of the road made; that he afterwards had located finally and definitely about one-half of the entire line, and made a report thereof to the directors of the company.

It was after this report that application was made to the defendant as per statute in that case made and provided, to order an election and subscribe stock, &c., for the payment of which the bonds sued on were issued.

The plaintiff proved in rebuttal the payment of interest on the bonds by the county for several years.   This was all the evidence in the case.

The court charged the jury as follows : —

" 1. That the defendant county had legislative authority to issue the bonds declared on, upon the conditions prescribed in the acts having reference to the matter, and that if the jury find from the evidence adduced in the case that said bonds had been issued by the county judge and clerk as alleged and verified by the county seal, and that plaintiff was a *bona fide* holder for value without notice, that the same was issued by virtue of an election ordered and held before a final and definite survey and location of the line of said road had been made, the same would be valid in the plaintiff's hands, and the jury ought to find a verdict against defendant.

" 2. That if the evidence of Falconett were true, the condition contained in the acts aforesaid, requiring a survey and location of the line of said road, and an estimate of the cost thereof made before an election to determine whether the county should subscribe stock in said railroad, &c., could be lawfully ordered and held, had been substantially complied with, and there was nothing in Falconett's testimony militating against plaintiff's right to recover."

The jury found a verdict for the plaintiff, on which judgment was rendered.   To reverse this judgment this writ of error is brought.

The plaintiff in error claims that it is apparent on the face of the declaration that the Circuit Court was without jurisdic-

tion, because both the parties were citizens of the State of Tennessee.

Sect. 629 of the Revised Statutes of the United States declares that the circuit courts shall have original jurisdiction as follows : . . . "*Tenth.* Of all suits by or against any banking association established in the district in which the court is held, under any law providing for national banking associations."

This section gives the circuit courts jurisdiction of suits brought by or against a national bank, without regard to the citizenship of the parties, and it has been so held by this court. *Kennedy* v. *Gibson*, 8 Wall. 498.

The jurisdiction of the Circuit Court was, therefore, clear.

It is next claimed that the bonds sued on were not negotiable paper, and that, therefore, the plaintiff below showed no right of action in itself.

In order to make a promissory note or other obligation, for the absolute payment of a sum certain, on a certain day, negotiable, it is not essential that it should in terms be payable to bearer or order. Any other equivalent expressions demonstrating the intention to make it negotiable will be of equal force and validity. Com. Dig., Merchant, F. 5 ; 3 Kent, Com., lect. 44, p. 77 ; Chitty, Bills, c. 5, p. 180 (8th ed.) ; Bayley, Bills, 120 (5th ed.) ; Story, Prom. Notes, sect. 44.

The purpose of the plaintiff in error that the bonds on which the suit is brought should be negotiable is perfectly clear. They are payable to the railroad company or holder if the bond is transferred by the signature of the president of the company.

This is equivalent to making the bonds payable to the company or order, provided the "order" or indorsement is made by the president of the company. They bear his indorsement transferring them to bearer. On what ground their negotiability can be denied it is difficult to imagine. They are in precisely the same plight as a promissory note payable to order and indorsed in blank, or to bearer, the title to which passes by mere delivery. Chitty, Bills, 252, 253 (8th ed.) ; Bayley, Bills, c. 1, sect. 10, p. 31 (5th ed.).

It is next objected that the court erred in sustaining the

demurrer of the plaintiff to the fourth, fifth, sixth, seventh, eighth, ninth, and tenth pleas.

It is quite evident, however, from the record that all the defences set up in these pleas were allowed to be made under the other pleas, to which the demurrers were overruled. Whether the court was right or wrong in its judgment on the demurrers is, therefore, entirely immaterial. " There must be some injury to the party to make the matter generally assignable as error." *Greenleaf's Lessee* v. *Birth*, 5 Pet. 132; *Randon* v. *Toby*, 11 How. 493.

It is next alleged as error that the court instructed the jury that the county of Wilson had legislative authority to issue the bonds sued on, upon compliance with the conditions prescribed by the law.

There is certainly no express provision in chap. 3, art. 3, of the code which authorizes the issue of bonds. It has been so held by the Supreme Court of Tennessee. *Justices of Campbell Co.* v. *Knoxville & Kentucky Railroad Co.*, 6 Cold. (Tenn.) 598. The implication against the power to issue bonds is very persuasive. The act contemplates the payment of the stock subscribed for in instalments, and provides the means of payment, as they fall due, by a special tax. The bond of the officer who collects this tax requires him to pay it over to the railroad company. If the purpose of the act had been to authorize the payment of the stock in bonds, the county, after paying in bonds, would not have been required to pay over to the railroad company the railroad tax collected to satisfy the bonds. In other words, the county would not have been required to pay twice for its stock, — once in bonds and once in money. See *Wells* v. *Supervisors*, 102 U. S. 625.

But the act of Dec. 16, 1867, to incorporate the Lebanon and Gallatin Railway Company, some of the provisions of which have been stated, clearly implies the power in the county authorities to subscribe stock in the Tennessee and Pacific Railroad Company, and to issue bonds in payment therefor.

Sect. 4 declares that subscriptions to the capital stock of the railroad company may be taken in county bonds, and sect. 19 authorizes the commissioners provided for in sect. 3 to apply for a subscription to the capital stock of the railroad company,

payable in the bonds of the county, whereupon the county authorities are required to cause an election to be held, first causing thirty days' notice of such election, the amount of stock to be subscribed, for what purpose, and how and when payable, to be given, as required in county elections.

There can scarcely be a stronger implication of the power to issue bonds.

What is implied in a statute is as much a part of it as what is expressed. *United States* v. *Babbit*, 1 Black, 55; *Gelpcke* v. *City of Dubuque*, 1 Wall. 175.

We think, therefore, that the power of the county, under the act of Dec. 16, 1867, to issue bonds in payment of stock taken by it in the Tennessee and Pacific Railroad Company is beyond question, and that the Circuit Court did not err in saying to the jury that such power existed.

Plaintiff in error claims next that there was evidence tending to show that the bonds in suit were issued by virtue of an election ordered and held *before* a final and definite survey and location of the railroad had been made, and that the court erred in instructing the jury that, if plaintiff was a *bona fide* holder without notice of that fact, the bonds would be valid in his hands, and there should be a verdict against defendant.

The charge was not erroneous, because the law does not require that there shall be a final and definite survey and location of the road before an election is held to decide whether or not the county shall subscribe stock. Its requirement is that the entire line of the road shall be surveyed by a competent engineer, and substantially located by designating the termini and approximating the general direction of the road. The evidence of Falconett, the engineer, showed that this had been done.

The law even contemplated that this survey might be made before the railroad company was organized, for it declared that the application to the county authorities to order an election might be made by the commissioners appointed to open subscription books for the stock of such road, or by the board of directors if the company was organized. It would be a strange enactment, indeed, which snould require a final and definite

survey and location of the line of a railroad before any company had been organized to construct it.

The next complaint of the plaintiff in error has reference to the charge of the court to the effect that, if the evidence of Falconett, the engineer, were true, the election to decide whether the county would subscribe to the stock of the railroad company was lawfully held.

The contention seems to be that before an application could be made to the county authorities to order an election to decide whether or not the county should subscribe to the stock of the railroad company, an estimate in linear and cubic feet and yards of the embankment, grading, and masonry should be made, on oath, and filed with the application. It is asserted that no such estimate of quantity was made, but merely an estimate of the cost, and that this was not a compliance with the law.

We think the Circuit Court gave a correct construction of the law in instructing the jury substantially that it was an estimate of the cost and not of the quantity of the grading, embankment, and masonry that was required to be made by the engineer. The point upon which information was necessary to enable the people of the county to vote intelligently on the question whether or not they should subscribe to the stock of the railroad company was what would the road cost, and not how many yards of embankment or excavation or what quantity of masonry would be required to construct it.

If we are right in these views, then all the conditions precedent upon authority of which the power to issue bonds depended were performed, and there being legislative authority for the issue of the bonds upon such performance, no valid objection can be raised to their enforcement.

*Judgment affirmed.*