STATE OF MISSOURI at the relation of ABNER H. FERGUSON, Federal Housing Administrator, serving as Federal Housing Commissioner Under Executive Order No. 9070, Relator, v. FORREST C. DONNELL, DWIGHT H. BROWN, ROY McKITTRICK, FORREST SMITH, WILSON BELL, and BYRON SCHUBEL, as members of the State Board of Equalization of Missouri; JESSE A. MITCHELL, LAWRENCE BOOGHER, CLARENCE EVANS, and BYRON SCHUBEL, as members of the State Tax Commission of Missouri; CLIFFORD CORNELI, HENRY L. MUELLER, HENRY W. J. ROTT, WALTER E. MILLER, ROY D. JABLONSKY and PHILLIP G. DEUSER, as members of the County Board of Equalization of St. Louis County, Missouri; WALTER E. MILLER, as County Clerk of St. Louis County, Missouri; PHILLIP G. DEUSER, as Assessor of St. Louis County, Missouri; and WILLIS W. BENSON, as Collector of Revenue of St. Louis County, Missouri.—163 S. W. (2d) 940.

Court en Banc, July 7, 1941.

Rehearing Denied, July 28, 1942.

*Harry C. Blanton* and *Russell Vandivort* for relator.

*Roy McKittrick,* Attorney General, *Robert L. Hyder* and *Tyre W. Burton,* Assistant Attorneys General, for respondents; *Edwin F. Vetter* of counsel.

 TIPTON, J.—This is an original certiorari proceeding to review the records of the respondents in reference to the validity of a tax assessment upon certain personal property owned by the relator and used by him in connection with the operation of a group of apartment buildings in St. Louis County, Missouri, which he acquired pursuant to Title II of the National Housing Act. To the repondents' return, the relator has filed a motion for judgment on the pleadings.

Respondents have adopted the relator's statement of facts, and we will do likewise. These facts are as follows:

"This is an original certiorari proceeding in which the State Board of Equalization, the State Tax Commission, the Board of Equalization of St. Louis County and certain St. Louis County officers have been required to certify their records to this Court to enable it to adjudicate the validity of a purported tax assessment. The assessment was made upon certain personal property owned by the Federal Housing Administrator and used by him in connection with the operation of a group of apartment buildings in St. Louis County, Missouri, which he had acquired pursuant to Title II of the National Housing Act.

"The facts in the case are not in dispute. The State Board of Equalization, the State Tax Commission, and the County Board of Equalization each made extensive findings of fact, by which the facts were found to be as hereafter stated. The parties by their stipulation agreed that such were the facts.

"The personal property which was the subject of the disputed tax assessment was acquired by the Federal Housing Administrator under the following circumstances:

"In 1938, the Manhassett Village Corporation, a Missouri corporation, desired to build a group of apartment buildings in St. Louis County, Missouri, and made arrangements to borrow the necessary funds from the New York Life Insurance Company. The plan contemplated that the payment of the debt was to be insured by the Federal Housing Administrator pursuant to the National Housing Act.

"On March 16, 1938, Manhassett Village Corporation borrowed the sum of One Million Six Hundred Thousand Dollars ($1,600,-000.00) from the New York Life Insurance Company, for the purpose of constructing the group of apartment buildings hereinafter called 'Manhassett Village.' The debt was secured by a deed of trust on Manhassett Village.

"On March 21, 1938, Stewart McDonald, as Federal Housing Administrator, executed a contract of mortgage insurance, pursuant to Section 207 of Title II of the National Housing Act, by which the New York Life Insurance Company was insured against loss by reason of non-payment of the deed of trust.

"Thereafter, the development called Manhassett Village was constructed, it being an apartment community of seven (7) buildings containing three hundred and fifty-four (354) three and four room apartments, designed to be let to tenants for living quarters. It covered approximately twenty-one acres.

"Payments under the deed of trust were defaulted and Manhassett Village was purchased by the New York Life Insurance Company at a sale under the deed of trust on February 26, 1940, for the amount of One Million Five Hundred Two Thousand Two Hundred Ninety-Five Dollars ($1,502,295.00).

"Thereafter, on March 6, 1940, the New York Life Insurance Company called upon the Federal Housing Administrator to fulfill his obligations under the mortgage insurance contract and conveyed Manhassett Village to him. The Company also assigned to him a deficiency claim which it had against Manhassett Village Corporation in the amount of One Hundred Thirty Thousand Nine Hundred Ninety-Three Dollars and Eleven Cents ($130,993.11).

"The deed and assignment both conveyed the property described therein to 'Stewart McDonald, of Washington, D. C., as Federal Housing Administrator, under the provisions of the National Housing Act, as amended, his successors and assigns.'

"During the time in which Manhassett Village Corporation operated Manhassett Village, the Corporation acquired certain tools, fixtures, machinery, office furniture and equipment which were necessary for use in connection with Manhassett Village in order to operate the apartments efficiently and make available to the tenants such services as tenants of apartment buildings ordinarily receive in the vicinity of the City of St. Louis and St. Louis County. The property is described in detail in the findings of fact made by the various tax agencies.

"The original deed of trust on Manhassett Village, the trustee's deed to the New York Life Insurance Company thereunder, and the deed to the Federal Housing Administrator all purported by their terms to include said personal property used in connection with Manhassett Village, so that title to it passed to the Administrator at the same time he acquired Manhassett Village. As a precaution, however, the Administrator also procured a conveyance of said personal property directly from Manhassett Village Corporation on May 6, 1940.

"On March 19, 1940, the Barngrove Realty Company of St. Louis became the agent of the Federal Housing Administrator for the purpose of operating and managing Manhassett Village. Between that date and June 1, 1940, it became necessary to acquire, and the Administrator did acquire, a small amount of additional personal property for use in connection with Manhassett Village. That property is also described in the findings of fact.

"Thereafter, the Assessor of St. Louis County, Martin L. Neaf, caused a list to be compiled of all the above mentioned personal property and found that on June 1, 1940, its value was Three Thousand Three Hundred and Sixty Dollars ($3,360.00). He further found that the above property acquired between March 19, 1940, and June 1, 1940, had a value of One Hundred and Four Dollars ($104.00), which was, however, included in the valuation of Three Thousand Three Hundred and Sixty Dollars ($3,360.00).

"Thereafter, Martin L. Neaf made and entered a tax assessment against 'McDonald, Stewart, as Federal Housing Administrator, 201 N. 4th St.' in the amount of Six Thousand Seven Hundred and Twenty Dollars ($6,720.00). The assessment was based upon the above-mentioned personal property and was entered as of June 1, 1940. It was double the value originally determined by the Assessor, because no tax return had been made by the Federal Housing Administrator or his agents with reference to the personal property involved, it being the Administrator's opinion that such personal property as he owned in his official capacity was not subject to a State personal property tax.

"Appeals from said assessment were duly prosecuted by Stewart McDonald, and his successor as Federal Housing Administrator, Abner H. Ferguson, through the Board of Equalization of St. Louis County, the State Tax Commission, and the State Board of Equalization, all of which entered findings of fact and orders, by which they found the facts to be as stated herein, but concluded as a matter of law that the tax assessment was valid. The facts found by the State Board of Equalization, the State Tax Commission and the County Board of Equalization were identical for all practical purposes, and in the interest of brevity the record references contained in this statement are largely confined to the findings made in the order entered by the State Board of Equalization. The parties also stipulated the facts to be as related herein."

Relator contends that the personal property involved is immune from State taxation because it is used in carrying on a Federal Government function.

Briefly, the National Housing Act (12 U. S. C. A., Chapter 13), provides a method of making available credit "for the purpose of financing, alterations, repairs, and additions upon improved real property, and the purchase and installation of equipment and machinery upon such real property, . . ." The act defines a mortgage to be "a first mortgage on real estate in fee simple, or on a leasehold . . ."

The act contemplates that the mortgagee shall insure his mortgage with the Federal Housing Administrator, and, in event of default of the mortgage, the mortgagee must foreclose the mortgage and convey the foreclosed property to the Federal Housing Administrator, who

will pay to the mortgagee the amount found due under the mortgage, and the Administrator shall operate the property until disposed of under the provision of the Act.

Respondents contend that under this Act, the relator has no authority to own the personal property in question, for the reason that he can only acquire title to the mortgaged property which must be a first lien or mortgage upon real estate or a leasehold. It is true the act does not specifically refer to personal property, but always refers to real property or property, and when only the word "property" is used, it is synonymous with the words "real property."

While relator does not point to any section that contains the words "personal property," he does contend that the act is broad enough to include personal property necessary to the management of the real property that he owns for the benefit of the Federal Government, and under the act, he is given authority to "complete, reconstruct, and rent" property acquired.

In his reply brief, he says, "The fact that he is specifically authorized to 'establish suitable agencies for the management of' such projects shows that it is intended that the Federal Housing Administrator shall acquire and use such personal property as may be necessary to the management of the real property involved."

Respondents admit the personal property involved is necessary to the management of the real property in question. Among the personal property listed is a motor bus to transport tenants from the apartment buildings to the bus lines and street car lines that go into the City of St. Louis. Also, there are fire extinguishers, lawn mowers, garden hose, window shades, and lamps, which were used in connection with the management of this real property. Since this personal property was necessarily used in connection with the management of the real estate, the relator contends that the law is when a power is conferred by statute, everything necessary to carry out the power will be implied. He relies upon the case of Dooley v. Pennsylvania Railroad Company, 250 Fed. 142, l. c. 143, where the court said,

"It is elementary that what is implied in a statute is as much a part of it as what is expressed. [County of Wilson v. National Bank, 103 U. S. 770-778, 26 L. Ed. 488; City of Little Rock v. U. S., 103 Fed. 418, 420, 43 C. C. A. 261.] It is also elementary that, when a power is conferred by statute, everything necessary to carry out the power and make it effectual and complete will be implied."

To the same effect is the case of United States v. Kelly, 55 Fed. (2d) 67, also relied upon by relator. We, also, have announced this rule of law. In the case of State ex rel. Wahl et al. v. Speer et al., 284 Mo. 45, 223 S. W. (2d) 655, l. c. 660, we said:

"The rule for interpreting statutes, that a given power carries with it, incidentally or by implication, powers not expressed, but

necessary to render effective the one that is expressed, . . ."

We have, also held that which is implied in a statute is as much a part of it as what is expressed. [State ex rel. O'Connor v. Riedel, 329 Mo. 616, 46 S. W. (2d) 131; Bowers v. Missouri Mutual Association, 333 Mo. 492, 62 S. W. (2d) 1058.]

We, therefore, hold that while the National Housing Act does not expressly state that the Administrator shall own personal property that is necessary to use in the management of real property owned by him after a foreclosure, he is impliedly given the power. In other words, the words "real estate" as used in this act includes the personal property necessary to the use of the real estate.

■ Section 1714 of the 12 U. S. C. A. 1012 provides:

"Nothing in this title shall be construed to exempt any real property acquired and held by the Administrator under this title from taxation by any State or political subdivision thereof, to the same extent, according to its value, as other real property is taxed. [June 27, 1934, c. 847, sec. 208, 48 Stat. 1252.]"

We think that when Congress provided that state taxes on real estate should not be exempted, it also impliedly provided that a state tax on personal property held by the Federal Administrator that was necessary to the use of the real estate should not be exempted. There could be no reason for any such distinction between the real property and such personal property.

■ Relator, also, contends that the personal property involved is exempt by virtue of Section 10937, R. S. (Mo.) 1939, which provides:

"The following subjects are exempt from taxation: First, all persons belonging to the army of the United States; second, lands and lots, public buildings and structures with their furniture and equipments, belonging to the United States; . . ."

The question for our decision is, whether the personal property in question is the furniture and equipment of public buildings and structures belonging to the United States. The title to this property is in the name Federal Housing Administrator, and for the purposes of this case, we will assume that is sufficient to say it belongs to the United States. [Contra, see Speed et al. v. St. Louis County Court, 42 Mo. 382.] We do not believe these apartment buildings are public buildings within the meaning of this section. "Manifestly that language means a place exposed to the public, and where the public gather together or pass to and fro, and the building referred to means a public one, and belonging to or used by the public for the transaction of public or quasi public business, such as a schoolhouse, courthouse, or other similar one." [Lewis v. Commonwealth, 247 S. W. (Ky.), l. c. 751.]

The apartments in these buildings are rented to private individuals in which these individuals and their families live. In fact, they are

rented in competition with privately owned apartment buildings. They are not open to the public, and, therefore, are not public buildings. Their furniture and equipment, therefore, are not exempt from taxation under this section of our statutes.

It follows from what we have said, that our writ heretofore issued should be quashed. It is so ordered. All concur except *Gantt, J.*, absent.