STATEN ISLAND EDISON CORPORATION, Plaintiff, v. NEW YORK CITY HOUSING AUTHORITY et al., Defendants.

Supreme Court, Special Term, Richmond County, December 11, 1944.

*George Foster, Jr.*, for plaintiff.

*Ignatius M. Wilkinson, Corporation Counsel (Francis J. Bloustein* of counsel), for defendants.

GARVIN, J. In an action by plaintiff, Staten Island Edison Corporation, hereinafter for convenience called "Edison," against New York City Housing Authority and the City of New York, hereinafter called "Authority" and "City", respectively, plaintiff moves for an order directing judgment on the pleadings in its favor under rule 112 of the Rules of Civil Practice.

The action is brought to secure a declaratory judgment and a monetary award. "Authority" is a public corporation and a corporate government agency organized under the laws of the State of New York for the purpose of developing public housing projects. One of these projects, located on Staten Island, is known as "Edwin Markham Houses" and consists of residence apartments housing many tenants. As these apartments approached completion, "Edison" was requested to supply electricity for the use of the tenants. "City" claimed that this service should be supplied at the rate charged for "public buildings." "Edison" insisted that the service should be supplied under its service classification No. 2 (general service), a higher rate. In order that electric current might be supplied without delay when the apartments of "Authority" were completed, the parties hereto made an agreement in writing which provided that "Edison" would furnish electric current at the rate charged for public buildings until there could be a judicial determination of their respective rights.

Accordingly, current was furnished by plaintiff without delay and without prejudice. Its bills under service classification No. 2 amounted to $7,345.95. At the rate charged for " public buildings " the charge was $5,731.06. If plaintiff's contention is correct, it is entitled to receive the difference between these two amounts.

By the determination of this motion the court must decide the question: " Are these apartments ' public buildings '? " So far as this State is concerned, the question has not been squarely presented for judicial determination although the constitutionality of the laws under which " Authority " was organized is now well settled. (*Matter of N. Y. City H. Authority* v. *Muller*, 270 N. Y. 333.)

The apartments in this development are dwellings for persons of limited means and are not rented for general use. They were built with public moneys, but only persons able to meet specified requirements are accepted as tenants. The electric current goes through a common meter, is paid for by " Authority " (or perhaps by " City ") and rents are fixed on a basis which includes the electric service. As a result, of course, the tenants of the project, if " City's " contention is correct, thus indirectly but definitely obtain electric current at a lower rate than if they were tenants of an ordinary apartment house nearby or elsewhere in the city.

The principle involved was before the Supreme Court of the State of Missouri in *State ex rel. Ferguson* v. *Donnell* (349 Mo. 975) and the Supreme Court of the State of Ohio in *Housing Auth.* v. *Evatt* (143 Ohio St. 268) and *Housing Auth.* v. *Auditor* (143 Ohio St. 251). Both of these courts were of the opinion that Housing Authority dwellings are private — not public — buildings.

In *State ex rel. Ferguson* v. *Donnell* (*supra,* p. 981–982) it is said: " The apartments in these buildings are rented to private individuals in which these individuals and their families live. In fact, they are rented in competition with privately owned apartment buildings. They are not open to the public, and, therefore, are not public buildings."

In the *Housing Auth.* v. *Auditor* case (*supra,* p. 258) appears the following: " In the instant case the appellant is engaged in the business enterprise of being a landlord — a fact the true nature of which cannot be changed arbitrarily by mere legislative enactment alone. Clearly the appellant is a proprietor, and as such cannot be heard to complain when its property is not permitted to escape the tax burden common to all proprietors."

The *Housing Auth.* v. *Evatt* case (*supra,* p. 278) quotes from an earlier decision of the Ohio State Supreme Court in which this language appeared: " ' It seems to us clear that where dwellings are leased to family units for the purpose of private homes, the use of such dwellings is private and not public.' "

Plaintiff's brief calls to the attention of the court that Internal Revenue Bulletin No. 15 points out that in this situation the Federal Government taxes " Edison " for this current supplied to " City " at the rate charged to privately owned apartments, but would not impose a tax if the current were supplied to " City " for its public buildings. While this is, of course, an injustice, indeed a gross injustice, it cannot be binding upon the court. These references are made to indicate the attitude of some of our courts and the Federal Government itself upon the question of interpretation here involved, which is contrary to the conclusion to be hereinafter announced. In this connection it must not be overlooked that to accept the position taken by defendants we must disregard section 65 of the Public Service Law which forbids unjust discrimination or unreasonable preferences by gas or electric corporations, unless we accept the position that " City," not the tenants, is the user.

Subdivision 2 of section 65 provides as follows: " No * * * electric corporation * * * shall directly or indirectly, by any special rate, rebate, drawback or other device or method, charge, demand, collect or receive from any person or corporation a greater or less compensation for * * * electricity or for any service rendered or to be rendered or in connection therewith, except as authorized in this chapter, than it charges, demands, collects or receives from any other person or corporation for doing a like and contemporaneous service with respect thereto under the same or substantially similar circumstances or conditions."

Subdivision 12 of section 66 of the same law provides: " No corporation * * * shall charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges applicable to such services as specified in its schedule filed and in effect at the time; nor shall any corporation * * * refund or remit in any manner or by any device any portion of the rates or charges so specified, nor to extend to any person or corporation, any form of contract or agreement, or any rule or regulation, or any privilege or facility, except such as are regularly and uniformly extended to all persons and corporations under like circumstances."

While this court would be disposed to agree with the reasoning of the *Ohio* and *Missouri* cases, to which reference has been made, if this were a case of first impression in all respects, a careful reading of the opinion in the *Muller* case (270 N. Y. 333, *supra*) by which this court is bound, leads to the conclusion that the New York Court of Appeals holds the view that the apartment houses in these developments are public buildings. That court points out that the legality of these developments is approved upon a much broader principle than is involved in providing better housing facilities for a limited number of tenants. The court clearly indicates its conclusion that the general public welfare is involved. Its opinion includes these statements, at page 341: " The menace of the slums in New York city has long been recognized as serious enough to warrant public action. The Session Laws for nearly seventy years past are sprinkled with acts applying the taxing power and the police power in attempts to cure or check it. The slums still stand. The menace still exists."

Again at pages 341–342: " To eliminate the inherent evil and to provide housing facilities at low cost — the two things necessarily go together — require large scale operations which can be carried out only where there is power to deal *in invitum* with the occasional greedy owner seeking excessive profit by holding out. The cure is to be wrought, not through the regulated ownership of the individual, but through the ownership and operation by or under the direct control of the public itself. Nor is there anything novel in that. The modern city functions in the public interest as proprietor and operator of many activities formerly and in some instances still carried on by private enterprise.

" It is also said that since the taking is to provide apartments to be rented to a class designated as ' persons of low income,' or to be leased or sold to limited dividend corporations, the use is private and not public. This objection disregards the primary purpose of the legislation. Use of a proposed structure, facility or service by everybody and anybody is one of the abandoned universal tests of a public use. [Citing cases.] "

And finally, at page 343: " In a matter of far-reaching public concern, the public is seeking to take the defendant's property and to administer it as part of a project conceived and to be carried out in its own interest and for its own protection. That is a public benefit and, therefore, at least as far as this case is concerned, a public use."

This seems to indicate that it is the court's conclusion that it is not the use of the development by private families but rather

the purpose of its use which determines the character or classification of the development.

Based upon the views expressed in the *Muller* case (*supra*) this court is of the opinion that in this State it must be held that low cost housing is a public use and benefit; that, therefore, " Edwin Markham Homes " is a " public building " entitled to be served with electric energy by plaintiff at the same rate as charged by it to " City " for " public buildings."

Further authority in this State for the conclusion that buildings of this type are " public buildings ", will be found in cases involving subdivision 3 of section 4 of the Tax Law* of this State as will be immediately hereinafter indicated.

Whether property is used for public or private use has been considered by the New York courts in connection with said section and subdivision: " The distinction between the ownership by a municipality of property for public or governmental purposes, and for purely private or commercial purposes, was early recognized in this State, and has always been observed. (See *Bailey* v. *Mayor*, 3 Hill, 531; *Lloyd* v. *Mayor*, 5 N. Y. 369.) " (*Clark* v. *Sprague*, 113 App. Div. 645, 646.)

" The expression ' public use,' as employed in the statute, has never been defined with exactitude. Its meaning must necessarily depend upon the peculiar circumstances of each case. Certainly the land is not used in the sense of being occupied or employed for any public purpose. Most of it is idle, and not used at all; the balance is in the possession of private individuals as lessees, and not of the public generally. Under these circumstances plaintiff is not entitled to exemption under the statute. ' Held for a public use,' in this connection, means that the property should be occupied, employed, or availed of, by and for the benefit of the community at large, and implies a possession, occupation and enjoyment by the public, or by public agencies. (Cooley, Constitutional Limitations [7th ed.], p. 766; *Gearin* v. *Marion County*, 110 Ore. 390, 401; 223 P. 929, 933; *School District of Fort Smith* v. *Howe*, 62 Ark. 481, 485; 37 S. W. 717.)

" The term ' public use ' is defined in *Williams* v. *Lash* (8 Minn. 496) as ' that actual use, occupation and possession of real estate, rendered necessary for the proper discharge of the administrative or other functions of the county, through its appropriate officers.' " (*County of Herkimer* v. *Village of Herkimer*, 251 App. Div. 126, 128–129.)

---

* This subdivision exempts from taxation the property of a municipal corporation held for a public use.— [REP.

The New York Court of Appeals recently had occasion to express its views upon the same subject: "Property held by an agency of the State is ordinarily immune from taxation only while it is used for a public purpose. Property used primarily to obtain revenue or profit is not held for a public use and is not ordinarily immune from taxation, but property held by a State agency primarily for a public use does not lose immunity because the State agency incidentally derives income from the property. * * * A municipality or agency of the State carrying out a public purpose may at times compete with private business. Those owning the private business are not deprived of their right to the equal protection of the law, guaranteed by the Constitution of the United States, because the private business is subjected to a tax from which the State agency is immune (*Puget Sound Power & Light Co.* v. *County of King*, 264 U. S. 22.) The general principles stated in the opinion in that case justify the exemption from taxation of property held by a public agency for a public purpose and not primarily for revenue, though as an incident of the execution of its public purpose the public agency derives revenue from a use of the property in competition with property put to similar use by private owners (Cf. *State Board of Tax Commissioners* v. *Jackson*, 283 U. S. 527, 537.) " (*Bush Terminal Co.* v *City of New York*, 282 N. Y. 306, 321, 322.)

The Appellate Division of this department, following the rule laid down in the *Bush Terminal* case (*supra*) held, in the case of *Kennedy & Co., Inc.*, v. *N. Y. World's Fair 1939, Inc.* (260 App. Div. 386, 389, affd. 288 N. Y. 494), as follows: "The question presupposes that the operation of the fair is a 'private purpose.' It would seem that under the authorities the World's Fair is of such a nature that it is a 'public purpose.' The fair has the sponsorship, in different degrees, of the city, State and Federal governments. It includes exhibits of art, science, business, states and nations, and educational and recreational facilities. The defendant Fair Corporation is a non-profit membership corporation; and the enabling legislation (Laws of 1936, chap. 544) and a subsequent enactment (Laws of 1939, chap. 471) provide that after payment of expenses, any surplus resulting is to be turned over to the city and the State for public purposes. The fact that an admission fee to the fair is charged does not alter its public character. It has been frequently held that municipal corporations may receive revenue from certain functions without losing their municipal rights. (*Bush Terminal Co.* v. *City of New York*, 282 N. Y. 306, 317, 318; *People ex*

*rel. Mayor, etc., of N. Y.* v. *Assessors,* 111 id. 505; *People ex rel. Trustees M. H. & A. Fund* v. *Miller,* 279 id. 137.) ''

Upon the general subject the following appears in Corpus Juris Secundum (Vol. 12, Building, p. 385) : '' *Public Building.* In a narrow sense a ' public building ' is a building erected and owned by state, county, or municipal authorities; a building owned or controlled and held by the public authorities for public use; a building belonging to, or used by, the public for the transaction of public or quasi-public business.''

In holding the development to be a '' public building '' and thus subject to a charge for electric energy at '' public building '' rates, there is no violation of the discrimination statutes of the Public Service Law. The tenants of the development do not directly pay specifically for electric energy. The amount of rent paid by a tenant is not affected by the use of more or less electric energy. The prime purchaser of the energy is the '' City '' or '' Authority ''.

The court is of the opinion, therefore, that it must be constrained to hold that these apartments are '' public buildings ''. Plaintiff's motion is denied and judgment is directed in favor of defendants, determining and declaring that the housing development known as '' Edwin Markham Houses '' is a ''public building '' and should be supplied with electric energy at '' public building '' rates.