**BROADWAY NATIONAL BANK, a National Banking Company, Appellant,**

v.

**LINWOOD STATE BANK, a Missouri Banking Corporation, and C. W. Culley, Commissioner of Finance, State of Missouri, Respondents.**

No. 54582.

Supreme Court of Missouri, Division No. 2.

July 13, 1970.

As Modified on Court's Own Motion July 15, 1970.

Mag, Thomson, McEvers & Fizzell, Kansas City, of counsel.

John C. Danforth, Atty. Gen., John C. Craft, Asst. Atty. Gen., Jefferson City, for respondent.

DAVID J. DIXON, Special Judge.

This appeal presents for review a determination of the Circuit Court of Jackson County affirming the action of the State Bank Board which in turn affirmed the action of the Commissioner of Finance to permit relocation of Linwood State Bank from its present location to a location at Armour and Main in Kansas City, Missouri. The parties will be referred to herein as Linwood, Broadway, Bank Board and Commissioner.

The bone and marrow of this appeal involves two points: First, is there competent and substantial evidence upon the whole record to support the administrative findings. Second, is the action of the Commissioner in issuing a contingent approval of the change in location of the respondent bank authorized by law.

The issue posed by the first point may be narrowed by accepting the statement made in appellant's brief concerning the issue. Appellant argues that "the convenience and needs of the Armour-Main area do not justify and warrant relocation * * * and the probable volume of business * * * is not sufficient to insure and maintain the solvency of Linwood and of existing banks in the community without endangering the safety of any bank in the locality as a place of deposit of public and private moneys."

Many cases hold that such a contention requires that we examine the record to determine if there has been adduced competent and substantial evidence upon the whole record to support the administrative findings. Article V, Section 22, Constitution of Missouri, V.A.M.S.; Wood v. Wagner Electric Corporation, 355 Mo. 670,

Eugene P. Mitchell, Lee E. Stanford, Kansas City, for appellant, Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, of counsel.

Dick H. Woods, Kansas City, for respondent Linwood State Bank, Stinson,

197 S.W.2d 647; St. Louis County v. State Tax Commission, Mo., 406 S.W.2d 644.

Upon the hearing before the Bank Board, a voluminous record was compiled dealing primarily with the demographic features of the mid-central portion of the Kansas City metropolitan area. It is very difficult to condense this testimony into any sort of readable statement of facts because the experts who testified relied heavily upon statistical detail. Both sides used maps and areas to demonstrate their points and since they prepared these independently, the areas and statistics drawn therefrom do not permit comparison without virtual duplication of the transcript within this opinion. It is sufficient for the determination of this appeal to say that the witnesses for the respective parties were in conflict as to the basic facts of economic life for the banking institutions involved in this appeal. Appellant's witnesses testified that upon their analyses and survey of the rate of growth within the area they defined as the critical one, the growth would not justify the location of the Linwood Bank at its proposed site. Witnesses for Linwood, upon the basis of the statistical material presented to them, equally urgently contended that growth in the area was more than sufficient to justify relocation and that after such relocation all in the area would enjoy a healthy competitive situation which would fairly divide the potentially increased volume of business and would serve the convenience and needs of the community by the proposed relocation. There is thus presented a square conflict in the evidence before the State Banking Board. It is apparent from an examination of all the evidence offered that the real area of dispute between the proponents and their experts is in the definition of the trade area of the respective institutions. Linwood's evidence presented detailed statistics of its present activities in the area based on the records of its bank and the growth factors in population and business activity within that specific area. Broadway, on the other hand, made no attempt in its proof to give evidence on the more restricted area as to population and economic growth, but attempted to relate evidence concerning an area described as the "zip code area" to the narrower, more restricted "trade area."

Upon this evidence, the Bank Board found that "the rate and amount of new construction, the number, income and occupational characteristics of people residing * * * number and nature of business concerns * * * located in the area * * * their convenience and needs * * * are sufficient to warrant and justify the opening of a bank at that location."

■ This finding is, in our view, based upon competent and substantial evidence and it matters not that there may have been evidence which would have supported a finding to the contrary. Doughton v. Marland Refining Co., 331 Mo. 280, 53 S. W.2d 236, 241.

■ On the other issue, Broadway claims there is not substantial and competent evidence that the probable volume of business is sufficient to insure and maintain solvency and safety of the bank as a place of deposit. The Bank Board found specifically against Broadway's contention. Furthermore, all of the witnesses except one, *including* three officers of Broadway, support this finding. The only evidence to the contrary was the opinion of one of Broadway's witnesses who claimed that Broadway's earnings would be "adversely" affected, and that if this were "projected" that "ultimately" it could not meet its obligations. The Board had the right, as it obviously did, to accord the testimony of the officers of Broadway greater weight than this rather speculative statement.

We defer to the Bank Board's finding, since it unquestionably is based on competent and substantial evidence.

We therefore hold that the rulings below, insofar as they are challenged as not being supported by competent and substantial evidence, are affirmed.

The second point to be determined is the legal effect and propriety of the action of the Commissioner in granting approval to the application of Linwood contingent upon submission of a resolution from the shareholders amending the articles of agreement and the recording of the same. This action of the Commissioner was taken pursuant to an investigation and examination as required by Section 362.325(7),[1] which provides as follows:

"7. Provided, however, that if the change undertaken by the bank or trust company in its articles of agreement shall provide for the relocation of the bank or trust company in another community, the commissioner shall make or cause to be made an examination to ascertain whether the convenience and needs of the new community wherein the bank desires to locate are such as to justify and warrant the opening of the bank therein and whether the probable volume of business at the new location is sufficient to insure and maintain the solvency of the bank and the solvency of the then existing banks and trust companies at the location, without endangering the safety of any bank or trust company in the locality as a place of deposit of public and private moneys, and, if the commissioner, as a result of the examination, be not satisfied in the particulars mentioned or either of them, he may refuse to issue the certificate applied for, in which event he shall forthwith give notice of his refusal to the bank applying for the certificate, which if it so desires may, within ten days thereafter, appeal from the refusal to the state banking board."

Broadway urges that the "contingent" approval of the Commissioner affirmed by the Board and the Circuit Court of Jackson County is void and of no effect. It argues that the language of Section 362.-325 is mandatory. It urges Linwood could not make *application* for change of location without full compliance with the requirements that a shareholders' meeting be called; the proposed change be submitted, and that such stockholder action shall be then recorded in the office of the Recorder of Deeds of the county in which the bank is located.

Linwood and the Commissioner urge substantial compliance by reason of the written pledge of the shareholders to take appropriate corporate action if the Commissioner approved the application and that the only practical way to implement the requirement of Section 362.325(7) of prior approval by the Commissioner was for him to proceed to give tentative or conditional approval and require compliance with the statute for issuance of the certificate.

Linwood's initial application to the Commissioner was referred to an examiner who made the finding required by Section 362.325(7) favorable to the application. It is apparent from his report that Broadway was adverse to the application. The record is then silent as to what, if any, proceedings occurred prior to the hearing before the Board. Broadway states in its petition for review:

"5. That on March 20, 1968, pursuant to RSMo. § 361.094(2) plaintiff duly filed with the State Banking Board an application for appeal from the action of the Commissioner of Finance granting said relocation of defendant Linwood State Bank."

When the matter was called for hearing before the Banking Board, the chairman stated:

"Let the record show that the appeal of the Broadway National Bank to the proposed relocation of the Linwood State Bank from 1120 Linwood Boulevard to the southwest corner of Armour and Main in Kansas City, Missouri, is now before the State Banking Board of the State of Missouri, and the hearing is now in session."

1. All statutory references are to RSMo 1959, V.A.M.S.

The application for an appeal to the Bank Board does not appear in the record, but the parties assumed that the review was pursuant to Section 361.094, which provides as follows:

"1. The state banking board shall with reasonable promptness hear and by order determine all appeals permitted by law from refusals of the commissioner of finance to grant certificates of incorporation to the proposed incorporators of banks, from refusals of the commissioner of finance to issue certificates permitting changes in the articles of agreement of banks to provide for the relocation of these banks in other communities, from refusals of the commissioner of finance to grant certificates of incorporation to the proposed incorporators of trust companies, and from refusals of the commissioner of finance to issue certificates permitting changes in the articles of agreement of trust companies to provide for the relocation of these trust companies in other communities.

"2. The state banking board shall hear and by order *determine an appeal from the action of the commissioner granting the incorportion or relocation of a bank or trust company upon application filed within ten days after the commissioner's action by a bank, trust company, national banking association or other persons claiming to be adversely affected thereby.* The application shall state the grounds upon which it is alleged that the action of the commissioner should be stayed, reversed or altered. In reviewing an application for appeal, the board shall have access to all of the records and information used by the commissioner in making his decision. A decision shall be rendered on the appeal within sixty days from the date of the application for appeal." (Emphasis supplied.)

Broadway frankly concedes in the argument that its appeal in this case might have been premature. Under Section 361.-094, the appeal must be filed within ten days after the "action of the commissioner." It is not clear under the statute as to when the appeal must be taken because of the ambiguity arising from the quoted language. Does "commissioner's action" refer to his investigation or to the issuance of the certificate? Plainly, if the commissioner had issued a certificate, an appeal would lie under the provision of Section 361.094. When action has been taken by the commissioner which is contingent upon further action by the applicant before it becomes final by the issuance of certificate, the question of when the appeal should be taken arises. No construction should be given to this statute which might prejudice the rights of persons not aware of the commissioner's action in making an investigation. The legislature was attempting to provide a method of appeal for persons not directly involved in the investigation by the commissioner and who might not be notified by him of the pending application. In such circumstances the only manner in which the public might be aware of the commissioner's action would be upon the issuance of the certificate and the recording of the amendments to the articles of the particular corporation. The construction which would more likely preserve the rights of all the parties would construe "commissioner's action" to mean the issuance of the certificate. The applicant cannot act to change its location until the certificate has been issued. The public will have knowledge and can make appropriate intervention. If the statute were construed to mean the investigation and the report of the commissioner prior to the issuance of his certificate, parties entitled to take an appeal might lose their right of appeal by the passage of ten days prior to their obtaining actual knowledge of the commissioner's action.

We hold that the proper construction to be placed upon the statutory language, "the action of the commissioner granting * * * relocation of a bank or trust company * * *" must mean the final action

of the commissioner, the issuance of the certificate. We recognize that this interpretation of the statute would indicate that Broadway's appeal in this case was premature and that it should not have appeared before the Board until the certificate had been issued by the commissioner.

We do not wish for this appeal to turn on the narrow procedural issue of the timeliness of Broadway's intervention and we therefore rule that the appeal in this case was appropriate to bring the issues presented before this court. This has in effect been conceded by Linwood by appearance before the Board and this court without objection to the timeliness of the appeal by Broadway.

■ Broadway's real argument relates solely to the *priority* or *schedule* of action under the statute. Neither Linwood nor Broadway assert that the commissioner could issue the certificate without compliance with the statute as to corporate action and recording. Broadway urges that the statute is mandatory with respect to such action. With this, we agree. To say that it is mandatory does not resolve the issue here presented. The question to be answered is when must it be done.

The language of the act is of little aid in answering this question. The subsection in question was engrafted upon the statute by the 1941 amendment. It does not specify in any manner the order of proceeding.

This amendment was made while State ex rel. Bank of Nashua v. Holt, 348 Mo. 982, 156 S.W.2d 708, was pending before this court. The holding of that case is that under the *prior* statute the commissioner had no power to refuse relocation to a previously chartered bank which complied with the statutory formalities of amendment of articles and recording. The amendment was plainly intended to provide for administrative discretion and examination before such relocation was permitted by the issuance of his certificate.

■ We do not believe it to be necessary or appropriate to this legislative intent to determine the order of proceedings under this statute. There may be cases and fact situations where the commissioner would be reluctant to proceed with an investigation and report until the formal requirements of the statute had been complied with. There may be other cases and fact situations where the commissioner might investigate and report upon the application prior to such formal compliance. A determination of a precise order of proceeding as a matter of statutory construction should only be resorted to in order to achieve the legislative purpose, and that is not required here. Much of the argument and brief of the parties is taken up with anticipated difficulties arising from the adoption of a rule requiring a particular order of proceeding. We conclude from this that no benefit can arise from a holding that a precise order is required. We conclude rather that, in the absence of a statutory direction as to the order of proceedings, the power and discretion on the part of the commissioner to proceed with his investigation and approval or rejection, or in a proper case to require conpliance by the amendment and recording before such action, is implied. State ex rel. Ferguson, Federal Housing Administrator v. Donnell et al., 349 Mo. 975, 163 S.W.2d 940, 944. This reasoning likewise permits some flexibility on the part of applicants for such relocation.

■ We conclude therefore that the action of the Commissioner in this matter was reasonable and proper and not in violation of the direction of the statute.

Mention was made in the argument as to the appropriate meaning of the statutory definition of the language "new community." We do not rule this question for it was not in issue between the parties. Linwood sought the approval required by the statute on the ground that the change of location was in fact to a "new community." Broadway met that issue in the evidentiary

hearing so that no construction of that language is required.

Broadway has litigated fully the factual and legal issues on this appeal and we therefore affirm the judgment of the Circuit Court upholding the action of the Board and Commissioner.

All of the Judges concur.