Dear Representative Cooper:
This opinion is in response to your question asking:
 Does the Clay County Board of Election Commissioners have authority to enter into contracts they deem necessary for the registration of voters and the conduct of elections ( § 115.043 R.S.Mo.) which obligate payment of funds from the general revenue of the City of Kansas City and the general revenue of Clay County ( §§ 115.073 and 115.075 R.S.Mo.)?
Your opinion request indicates you are concerned about two situations. You state those situations as follows:
 1. The Clay County Board of Election Commissioners desires to enter into a contract for the service and maintenance of voting machines, which has not been done for approximately ten years. The Clay County Budget Officer suggests that only he can enter into contracts.
 2. The Clay County Commission is insisting that the [voter registration] records presently maintained on Board computers be transferred to a new county computer system. The Board refuses to do so and desires to enter into a contract to upgrade present computer equipment.
Pursuant to Sections 115.015 and 115.017(4), RSMo 1986, the Clay County Board of Election Commissioners (the Board) is an "election authority" as that term is used throughout Chapter 115, RSMo. As the "election authority", the Board has the authority to "make all rules and regulations, not inconsistent with statutory provisions, necessary for the registration of voters and the conduct of elections." Section 115.043, RSMo 1986.
Specifically in regard to the voting machines at issue in the first fact situation, the Board is given broad responsibilities for the proper operation of those machines. Section115.267, RSMo 1986, provides:
 115.267. Experimental use, adoption of or abandonment of automated voting equipment authorized. — Any election authority may adopt, experiment with or abandon any voting machine meeting the requirements of this subchapter or any electronic voting system approved for use in the state, or may lease one or more voting machines or other equipment, either with or without option to purchase, and may use any authorized voting equipment at any polling place in its jurisdiction.
The Board as "election authority" also provides all ballots for the machines (Section 115.247, RSMo 1986) and "shall cause the voting machines to be put in order, set, adjusted and made ready for voting before they are delivered to polling places . . . [and] shall have all recording counters, except the protective counter on each voting machine set at zero (000)." Section 115.257.1, RSMo 1986. The Board has the responsibility to have the automatic tabulating equipment and marking devices tested and ready for operation at each election. Sections115.233 and 115.235, RSMo 1986. The Board may also provide for demonstrations and instructions on the proper use of the voting machines (Section 115.269, RSMo 1986) and provide for their use by other persons and organizations when not being used by the Board (Section 115.271, RSMo 1986).
Section 115.073.1, RSMo 1986, provides:
 1. In any county containing a portion but not the major portion of a city which has over three hundred thousand inhabitants, all general expenses related to the conduct of elections and the registration of voters shall be paid proportionally from the general revenue of the city and the general revenue of the county. The city shall pay such proportion as its population within the county is to the total population of the county as determined by the last preceding federal decennial census.
(Emphasis added.)
At a minimum, Sections 115.043, 115.267, 115.257, 115.233
and 115.235, give the Board, as an election authority, the authority to purchase, service and maintain voting machines as well as the marking devices and automatic tabulation equipment. Section 115.267 explicitly gives the Board the authority to purchase and lease voting machines. See State ex rel. Cole v.Matthews, 274 S.W.2d 286 (Mo. banc 1954) interpreting similar provisions in Chapter 121, RSMo Cum. Supp. 1953. Implied authority to provide for service and maintenance is derived as a necessary implication from the other cited provisions. This would logically include matters pertaining to keeping the voting machines and related equipment in working order.
 "It is elementary that what is implied in a statute is as much a part of it as what is expressed . . . . It is also elementary that, when a power is conferred by statute, everything necessary to carry out the power and make it effectual and complete will be implied." . . . . "The rule for interpreting statutes, that a power given carries with it, incidentally or by implication, powers not expressed, but necessary to render effective the one that is expressed, . . . ." [Citations omitted.] State ex rel. Ferguson v. Donnell, 349 Mo. 975, 163 S.W.2d 940, 943-944 (banc 1942).
The entire Comprehensive Election Act of 1977 discloses a clear legislative intent that complete supervision and control of registration and balloting be vested in the Board of Election Commissioners and it necessarily follows that no construction of the statutes relating to the conduct of such elections must be indulged which might serve to limit or unduly restrict the discharge of those duties enjoined upon the Board.
That the voting equipment be kept in good working order is necessary to the voting process. The cost of service and maintenance, then, is properly considered as one of the "general expenses related to the conduct of elections . . ." in Section115.073.1, which makes it the responsibility of the City of Kansas City and Clay County to pay for such servicing and maintenance.
The legislature has not provided any requirement that the Board of Election Commissioners be subject to the provisions of Section 50.660 of the County Budget Law or to any other county or city procedure involving purchasing. When enacting the Comprehensive Election Act of 1977, the legislature made explicit such requirements when it wanted them applicable. See, for example, Section 115.049.3 (Laws 1977, p. 207 Section 2.080) regarding the authority of the legislative body responsible for payment to approve or disapprove an increase in the number of Board employees or the total yearly amount of all salaries paid to Board employees, and Section 115.053.4 (Laws 1977, p. 207 Section 2.090) wherein the same legislative body must approve the amounts paid to deputies. The legislature has always been explicit when it wanted to involve the city or county in regard to Board expenditures.
This is consistent with past versions of the election laws in which the legislature made explicit its intent to subject a Board of Election Commissioners to the County Budget Law. For instance, Section 113.110, RSMo 1949, provided in part:
 "Said board of election commissioners is hereby authorized to provide, subject to the provisions of section 50.660, all necessary ballot boxes, registration books, verification lists, . . . ."
See State ex rel. Cole v. Matthews, supra, holding that, even under that statute, a Board of Election Commissioners still retained the discretionary authority to designate the type and number of voting machines with the county having only a ministerial duty of effecting the purchase of the machines. Section 113.110 was repealed by the Comprehensive Election Act of 1977. Since the legislature, when enacting that Act, kept that part of the scheme of the former law requiring cities and counties to pay registration and election costs, but did not retain the requirement, in regard to the types of costs which are the subject of this opinion, to have Section 50.660
applicable, it must be concluded that the legislature intended to change the law in regard to the applicability of that section.
 A statute as amended should be construed on the theory that the legislature intended to accomplish something by the amendment. . . . The legislature is not presumed to have intended a useless act . . . and the legislature's action of repeal and enactment is presumed to have some substantive effect such that it will not be found to be a meaningless act of housekeeping. [Citations omitted.] City of Willow Springs v. Missouri State Librarian, 596 S.W.2d 441, 444-445 (Mo. banc 1980).
Therefore, with respect to the first situation about which you are concerned, we conclude the Clay County Board of Election Commissioners has the authority to enter into a contract for the service and maintenance of voting machines, the Board need not comply with any purchasing procedures applicable to county purchases or to city purchases, and both the city and county are liable for their proportionate share of the cost.
We think that the same conclusion is called for in regard to the second situation concerning the upgrading of the Board's computer system. The law gives the Board a comprehensive set of responsibilities regarding the registration of voters and the maintenance of information concerning registrations. Section115.043, RSMo 1986, provides:
 115.043. Rules and regulations, powers of election authorities — Each election authority may make all rules and regulations, not inconsistent with statutory provisions, necessary for the registration of voters and the conduct of elections.
Section 115.141, RSMo 1986, provides:
 115.141. Registration to be supervised by election authority. — Each election authority shall supervise the registration of voters within its jurisdiction in accordance with this subchapter and shall direct the activities of all deputy registration officials.
The Board must also keep the registration information current and accurate through canvassing and other means. Sections115.179 to 115.223, RSMo 1986. To facilitate its fulfillment of these responsibilities, the Board has been authorized by the General Assembly to use computer technology:
 The election authority may place all information on any registration cards in computerized form. . . . [Section 115.157, RSMo 1986.]
Since the law has vested in the Board broad responsibilities regarding the collection and accuracy of registration data, it stands to reason that the discretion to choose the means by which the Board will fulfill its responsibilities lies with the Board. Again the City of Kansas City and Clay County are responsible for the costs of maintaining these record systems as "general expenses related to the conduct of elections and the registration of voters . . .". Section 115.073.1, RSMo 1986.
Although the Board has discretion when contracting for the purchase of services, the Board has a fiduciary duty to seek the best bid possible when contracting for services. Competitive bidding customarily enables a government entity to obtain the best price possible. For those services where competitive bidding is feasible, this office encourages the Board to solicit bids or proposals to ensure that the services are obtained at the best price possible.
Conclusion
It is the opinion of this office that the Clay County Board of Election Commissioners has the authority to enter into a contract for the service and maintenance of voting machines and has the authority to enter into a contract to upgrade its computer equipment, the Board need not comply with any purchasing procedures applicable to county purchases or to city purchases, and both the city and county are liable for their proportionate share of the costs as provided in Section115.073.1, RSMo 1986.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General