**WASHINGTON COMMERCIAL BANK, Appellant,**

v.

**William J. BOLLWERK, Donald C. Redding, William F. Enright, Jr., L. W. Meier, Jr., as Members of the State Banking Board, Respondents,**

and

**Bank of Washington, Intervenor.**

No. 40173.

Missouri Court of Appeals, Eastern District, Division 4.

March 20, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 15, 1979.

Application to Transfer Denied June 17, 1979.

Wayne L. Millsap, Harold P. Heitmann, Clayton, for appellant.

L. B. Eckelkamp, Jr., Jenny, Cole & Eckelkamp, Washington, John D. Ashcroft, Atty. Gen., Terry C. Allen, Asst. Atty. Gen., Jefferson City, for respondents.

DOWD, Presiding Judge.

A case involving the chartering of a bank.

Appellant Washington Commercial Bank appeals from the judgment of the Franklin County Circuit Court which affirmed the State Banking Board's denial of appellant's bank charter.

On June 1, 1976 the Washington Commercial Bank filed a reapplication for a certificate of incorporation with the Division of Finance of the State of Missouri.[1] The Division opined that the application satisfied the criteria of § 362.030 RSMo 1969 and granted the charter on January 7, 1977. The sole contingency upon which the charter hinged was a Division directive that the bank's capitalization be increased to $1,050,000.

The Bank of Washington (the intervenor herein) appealed the Division's grant of appellant's charter to the State Banking Board. The Board reversed the action of the Division of Finance holding that the charter should be denied because the capital subscribed to the bank was not ready for utilization in the transaction of the proposed bank's business. The Circuit Court of Franklin County affirmed this decision holding that the Board's findings of fact and conclusions of law resulted in an order which was supported by substantial and competent evidence upon the record as a whole.

This appeal ensued.

Appellant Washington Commercial Bank contends that the intervenor's appeal was not timely, that the issue of the composition of the capital was not properly before the State Banking Board, and that the latter's revocation of appellant's charter was predicated on a finding which was unsupported by the evidence.

■ Appellate review of an administrative decision is limited to the following considerations: a) did the agency act in violation of constitutional provisions; b) did the agency act in excess of its statutory authority or jurisdiction; c) was the finding of the agency unsupported by competent and substantial evidence upon the record as a whole; d) was the agency action unauthorized by law, for any reason; e) was the agency finding predicated upon unlawful procedure without a fair trial; f) was the agency action arbitrary, capricious or unreasonable; g) did the agency action involve an abuse of discretion. § 536.140(2)(1–7) RSMo 1953.

■ A reviewing court is permitted to reweigh the evidence for itself and determine facts only in cases where the agency decision does not involve the exercise of administrative discretion in light of the facts, but involves only the agency's appli-

1. The previous application for a charter was denied on February 6, 1976. The denial was explained by the Division as resulting from the

composition of the incorporating group as well as the management team.

cation of the law to the facts. § 536.140(3) RSMo 1953. Our scope of review is governed by this provision because this appeal concerns the Board's application of § 362.-030 and § 361.094(2) RSMo 1969 to the facts of this case.

In its first point appellant contends that the appeal interposed by the intervenor was not timely because it was filed January 20, 1977, more than ten days after the action of the Commissioner of Finance. The "action" referred to in § 361.094(2) RSMo 1969 has been construed as meaning the Commissioner's issuance of the certificate of incorporation. *Broadway National Bank v. Linwood State Bank*, 456 S.W.2d 296 (Mo.1970).

■ While the certificate of incorporation contains the date of January 7, 1977, the stipulated facts in the administrative record disclose that the decision of the Division of Finance was not to be deemed final until January 11, 1977. The intervenor, relying on this latter date as fixing the time within which an appeal was to be lodged, filed its request for review within the following nine days. The record reveals that the charter was being typed on January 11, 1977 and was not available for release to the attorneys before that date. The Commissioner of Finance testified that the charter was not "transmitted" until the recorded copy of the articles was returned. The articles were recorded on January 12, 1977. We are of the opinion that the intervenor's notice of appeal was timely filed. To hold otherwise would exalt form over substance. Accordingly, point one is ruled against the appellant.

The second point of error raised by the appellant is that the Circuit Court erred in affirming the Banking Board's order because the latter made a finding on an issue which was not specifically raised by the intervenor. The issue alleged not to have been raised concerned the availability of the capital of the proposed bank.

■ The notice of appeal filed with the State Banking Board by the intervenor contained the allegation that the proposed bank did not comply with all of the statutory requirements relevant to the chartering of a bank. The notice also contained the following language: "The requisite capital has not been subscribed in good faith and all thereof actually paid up in lawful money of the United States in the custody of the persons named as the first board of directors."

It is our opinion that these two assertions in intervenor's notice of appeal adequately raise the issue of the composition and availability of the proposed bank's capital, and were sufficient to put the appellant on notice that the precise issue was in dispute. Accordingly, point two is ruled against the appellant.

In its third point appellant alleges the Circuit Court erred in affirming the Banking Board's finding that the capital of the proposed bank was not available for use in the transaction of business, because said finding was not supported by the evidence.

The challenge to the bank's capitalization stems from the fact that at the time of the application the Mark Twain Bank held a certificate of deposit in the amount of $900,000.00 for the four trustees of the proposed bank.[2] This certificate of deposit represented a loan from the Mark Twain Bank to the incorporators of the proposed bank. The latter have made contributions in the amount of $56,000 to reduce their debt on the note. The collateral schedule which was filed by the Mark Twain Bank itemized the security pledged for the loan as consisting of an "assignment of proceeds of Mark Twain National Bank Certificate of Deposit No. 132 dated May 28, 1976, maturing August 26, 1976, in the amount of $900,000.00"[3] as well as all of the common stock owned or contracted for on behalf of the Washington Commercial Bank.

---

**2.** During the period of May 28, 1976 through February 24, 1977 the initial certificate of deposit was exchanged and reissued upon its maturity every three months.

**3.** The President of the Mark Twain Bank explained that this assignment signified "the funds resulting from the certificate itself", including those funds of the renewal certificate.

It is appellant's position that the capital was ready for immediate use, despite the subordinance of the Mark Twain Bank security interest. Appellant offered a letter from the Vice President of the Mark Twain Bank in support of this contention. The letter was addressed to the State Banking Board and provided:

"February 16, 1977
Mr. William J. Bollwerk, Chairman
State Banking Board
Aspenhof Corporation
149 North Meramec
Clayton, Missouri 63105
Dear Sir:

This letter will serve to advise you and the State Banking Board that there are no restrictions whatsoever on the $900,-000.00 Certificate of Deposit # 199, maturing February 24, 1977, held by this bank in the name of Richard V. Wagner and Amos D. Watson, Trustees for Washington Commercial Bank (In Organization), and that this bank has and does hold such $900,000.00 of the Washington Commercial Bank (In Organization), paid in actual cash, and ready for use in the transaction of business of the proposed bank pursuant to Section 362.030, RSMo, upon direction of the Commissioner of Finance, State of Missouri to deposit such funds to the account of Washington Commercial Bank.

Financing statements, assignments, and collateral schedules executed and maintained by this bank during the incorporation period are accordingly released and held for naught, notwithstanding any of the terms and conditions contained therein, with respect to these funds.
Yours very truly,
(Signature)
Peter Benoist
Vice President
cc: Mr. William R. Kostman
    Mr. Don C. Redding
    Mr. William F. Enright
    Mr. L. W. Meier"

Respondents, on the other hand, categorize this letter as only an attempt to release the pledge.

Robert C. Butler, the President of the Mark Twain Bank, was deposed before the Missouri State Banking Board. Butler characterized the Mark Twain Bank's security interest as being "subordinate to the direction of the Commissioner of Finance." He explained this description by saying that upon the Commissioner's directive to pay the proceeds of the certificate of deposit to the newly approved bank, the Mark Twain Bank would release the capital. At that point the Mark Twain Bank and the incorporators would renegotiate the collateral and payment terms of the individual notes. Although the purpose of the negotiation would be to determine whether specific collateral would be acceptable to the bank, Butler stated that the Mark Twain Bank might not even require collateral.

In the event the Commissioner were to refuse the charter, the Mark Twain Bank would perfect its interest in the certificate of deposit, cash it, and apply the proceeds to satisfy the indebtedness of the incorporators. Throughout the application procedure the certificate of deposit remained in the possession of the Mark Twain Bank as collateral.

A condition precedent to the granting of a bank charter is the satisfaction of the following statutory criteria: filing copies of articles of agreement; paying incorporation fees; demonstrating that the capital of the bank "has been subscribed in good faith and paid in actual cash and is ready for use in the transaction of business of the proposed bank";[4] demonstrating that the character of the incorporators deserve confidence that the business will be run honestly; and showing that the needs of the community justify the opening of a bank. § 362.030 RSMo 1969.

█ Upon appeal from a decision of the Commissioner of Finance the State Banking Board is entitled to hear the case de novo. *Century State Bank v. State Banking Board*, 523 S.W.2d 856 (Mo.App.1975).

---

4. Our research has not revealed a definition of this phrase.

As previously noted, the State Banking Board found that the appellants satisfied all but one of the statutory criteria: "the cash represented by the Certificate of Deposit was not ready for use in the transaction of the business of the proposed bank even though it was paid in actual cash." This finding was predicated on the Board's opinion that since the financing statements continued to be on file, the pledges were not released and therefore the certificate of deposit could not be used. The Banking Board also found that the letter from Peter Benoist of the Mark Twain Bank "did not relate to the availability of the cash for use in the transaction of business at the time the Commissioner considered and approved the charter application and amended articles of agreement".

It is true that the letter did not exist at the time the Commissioner of Finance considered and granted the charter application. The letter was addressed to the State Banking Board and was received during its hearing of this cause. Upon receipt of the letter, the Board was empowered to consider its efficacy as a release, and to conclude that the letter did not alter the status of the recorded security interest in the certificate of deposit.

A security interest in an instrument, such as a certificate of deposit, may be perfected by the secured party's taking possession of the instrument or by filing a financing statement representing the transaction. (§ 400.9–304 RSMo 1963). In the case before us, the Mark Twain Bank demonstrated its security interest in the instrument by employing both these methods.

In order to effect the release apparently intended in the letter authored by Peter Benoist, it was incumbent upon the Mark Twain Bank to relinquish possession of the instrument and file either a termination statement pursuant to § 400.9–404 (RSMo 1965) or a statement of release of collateral pursuant to § 400.9–406 (RSMo 1965). At the time of the State Banking Board hearing however, the financing statement remained on file, and the instrument continued to be in the custody of the Mark Twain Bank. Since the secured party did not comply with the statutory procedure governing the mechanics of a release, the letter, standing by itself, had no legal significance. Accordingly, we must affirm the finding that the certificate of deposit was encumbered and not ready for use in the transaction of business within the meaning of the statute. Point three is ruled against the appellant.

Judgment affirmed.

CRIST, J., and ALDEN A. STOCKARD, Special Judge, concur.